426 So.2d 1355 (1983)
SUCCESSION OF John Desmond PAYNE, Plaintiff-Appellee,
v.
Irma PAYNE et al., Defendants-Appellants.
No. 82-252.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
*1356 Gahagan & Gahagan, Russell E. Gahagan, Natchitoches, for defendants-appellants.
Charles W. Seaman, Natchitoches, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and GUIDRY, JJ.
GUIDRY, Judge.
In this suit the plaintiffs, Susie Marie Bayonne and Harold Bayonne, seek to be recognized as heirs of John D. Payne. The trial judge rendered judgment recognizing the plaintiffs as the illegitimate children of Payne and, as such, entitled to a proportionate share of his succession. The defendants, the widow and legitimate children of Payne, have appealed.
The issues presented by this appeal are (1) whether the Louisiana Supreme Court's decision in Succession of Brown, 388 So.2d 1151 (La.1980) declaring LSA-C.C. Art. 919 unconstitutional will be applied retroactively; and, (2) whether the plaintiffs have proved filiation within the time limits prescribed by the legislature.
John D. Payne was married to Irma Lee Young Payne from 1948 until his death in 1975. Five children were born of the marriage. In addition, Payne was the father of another legitimate child born of a prior marriage.
The plaintiffs, Susie Marie Bayonne and Harold Bayonne, were born in 1952 and 1954, respectively. They allege that they were born of a relationship between their mother, Laverne Bayonne, and John D. Payne. Laverne Bayonne testified that Payne was the father of her children and that up to a time following the birth of her children, Payne was the only man with whom she had ever had sexual relations. She further testified that for several years after their birth, Payne visited her and the children on a regular basis, supporting them by paying their rent, utility bills, buying groceries, and regularly sending supplemental cash. She further testified that Payne always admitted that he was the father of her children.
Susie Bayonne and Harold Bayonne both testified that John D. Payne always treated them as his children, introducing them as such to many people in the community. They further testified that Payne visited them two or three times a week, and that they referred to Payne as "daddy".
The testimony of the plaintiffs and their mother was corroborated by several witnesses who testified that Payne referred to Susie and Harold Bayonne as his children and introduced them as such. The witnesses, who were neighbors of Laverne Bayonne, further testified that Payne visited the children often, and that the plaintiffs, as children, addressed Payne as "daddy".
*1357 The defendants, the widow and legitimate children of Payne, could offer no proof that Payne was not the father of Susie and Harold Bayonne. They could only testify that Payne never admitted to them that he was the father of the plaintiffs. Suffice it to say that the evidence in the record amply supports the conclusion of the trial judge that the plaintiffs are the natural children of John D. Payne. In their brief to this court, appellants do not question correctness of the trial court's determination in this regard.
Payne died intestate on November 7, 1975. On September 16, 1980, the plaintiffs filed a petition for notice of application for appointment as administrator. Prior to that time, no succession proceedings had been commenced. On July 8, 1981, the plaintiffs filed this suit seeking a declaratory judgment recognizing them as the children of Payne and, thus, entitled to share in his estate.
In Succession of Brown, supra, the Louisiana Supreme Court declared that LSA-C.C. Art. 919[1] denied equal protection to acknowledged illegitimate children in violation of the Louisiana and United States Constitutions. The result of Brown is that an acknowledged illegitimate child must have the same status as a legitimate heir in an intestate succession.
The first issue we consider is whether the decision in Brown will be applied retroactively or prospectively. The question was considered by this court in Succession of Layssard, 412 So.2d 135 (La.App. 3rd Cir.1982), where we stated that the declaration of unconstitutionality of LSA-C.C. Art. 919 was to have prospective application only. However, subsequent to our decision in Layssard, the Louisiana Supreme Court reached a contrary result in Succession of Clivens, 426 So.2d 585, Louisiana Supreme Court docket number 82-C-0125 (La. 1982, on rehearing (La.1983), and we are compelled to adhere to the court's holding therein. In Clivens, the Supreme Court held that Brown is to be applied retroactively, as relates to testate as well as intestate successions, to January 1, 1975, the effective date of the Louisiana Constitution of 1974, as well as prospectively. Although in Brown and Clivens the court was concerned with the inheritance rights of acknowledged illegitimate children, it was made quite clear in Harlaux v. Harlaux, 426 So.2d 602 (La.1983), Louisiana Supreme Court docket number 82-C-0760, handed down the same day as the decision in Clivens, that the legal principles espoused in Brown and Clivens were equally applicable to unacknowledged illegitimates. In this regard the court, in Harlaux, stated:

"We find no reason to come to a different conclusion as pertains to unacknowledged illegitimates, as are involved in this case, in that the blanket exclusion of unacknowledged illegitimates from any inheritance rights in their fathers' intestate successions, notwithstanding that a child might be able to comply with reasonable rules on proof of paternity or filiation, presents the identical considerations involved in the exclusion of acknowledged illegitimates from inheritance rights in their fathers' successions. It is an unreasonable discrimination that bears no rational relationship to a legitimate state interest. Succession of Brown, supra."

The record shows that John D. Payne died intestate on November 7, 1975. Therefore, plaintiffs, having proved their filiation to Payne, are entitled to a pro rata share in the estate of Payne, notwithstanding the fact that Payne died some five years prior to the Supreme Court's decision in Brown, unless it be established that plaintiffs have failed to make such proof within the time limits prescribed by the legislature. We now address this final issue.
*1358 The applicable time limit for proof of filiation in such cases was established by Act 549 of the regular session of the 1980 legislature which was in effect on the date the instant suit was filed. The cited act provided in pertinent part as follows:
"Section 1. Articles 208 and 209 of the Louisiana Civil Code are hereby amended and reenacted to read as follows:

. . . . .
Art. 209. Methods of proving filiation.

. . . . .
5. Proof of filiation must be made by evidence of events, conduct, or other information which occurred during the lifetime of the alleged parent. A civil proceeding to establish filiation must be brought within six months after the death of the alleged parent, or within nineteen years of the illegitimate child's birth, whichever occurs first. If an illegitimate child is born posthumously, a civil proceeding to establish filiation must be instituted within six months of its birth, unless there is a presumption of filiation as set forth in Section 2 above. If no proceeding is timely instituted, the claim of an illegitimate child or on its behalf to rights in the succession of the alleged parent shall be forever barred. The time limitation provided in this Article shall run against all persons, including minors and interdicts."
The foregoing provision would preclude plaintiffs from proving filiation, since the plaintiffs are over nineteen years of age and John D. Payne's death occurred more than six months prior to the time suit was filed. However, Section 4 of Act 549 created a grace period within which illegitimates, who would otherwise be precluded, could prove filiation:
"Section 4. Any illegitimate child nineteen years of age or older shall have one year from the effective date of this Act to bring a civil proceeding to establish filiation under the provisions of this Act and if no such proceeding is instituted within such time, the claim of such an illegitimate child shall be forever barred."
R.C.C. Article 209 was amended by Act No. 720 of 1981 and again amended by Act 527 of 1982 and now provides in pertinent part as follows:
"C. The proceeding required by this Article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation."
Section 2 of Act 720 of 1981 also provided a grace period during which illegitimates, otherwise precluded, could prove filiation. This section reads as follows:
"Any person against whom the time period provided in this Act would otherwise have accrued except for the provisions of this section shall have one year from its effective date to bring a proceeding to establish filiation of a child. If no such proceeding is timely instituted, such filiation may not thereafter be established."
In view of our ultimate conclusion on the issue presented we need not consider whether the plaintiffs in this case were granted another grace period of one year by the second amendment to La.C.C. Art. 209 by Act 720 of 1981.[2]
The effective date of Act 549 of 1980 was July 23, 1980. The plaintiffs filed suit on July 9, 1981, well within the one year grace period. Both plaintiffs were over nineteen years of age at that time. Thus, if Section 4 of Act 549 of 1980 is to be given a literal interpretation it must be concluded that plaintiffs suit was timely filed. However, the defendants contend that the grace period *1359 created in Section 4 was intended to have no effect on the requirement that a suit to prove filiation be brought within six months of the death of the alleged parent. They argue that since John D. Payne died more than six months prior to the filing of the suit, the suit is barred. In support of their argument, defendants cite Harlaux v. Harlaux, 411 So.2d 581 (La.App. 1st Cir. 1982), writ granted May 7, 1982, where our brethren of the First Circuit held that Section 4 of Act 549 has no effect on the requirement that a suit to prove filiation be brought within six months of the death of the alleged parent. Although our Supreme Court has since rendered its decision in Harlaux, supra, this issue was not reached as such was made moot by their holding that Succession of Brown is only to be retroactively applied to January 1, 1975.
We find no merit in defendants contention and respectfully disagree with the conclusion reached by our brethren of the First Circuit in Harlaux. The plain language of Section 4 of Act 549 reveals no intent on the part of the legislature to restrict the effect of the grace period to those illegitimates whose parents were either not deceased or whose parents died within the previous six months. We acknowledge that the provisions of Section 4 are ambiguous as these provisions, if literally interpreted, would extend the one year grace period to illegitimates over nineteen years of age regardless of when their alleged parent died, while at the same time denying such rights to an illegitimate under nineteen years of age. As stated by our Supreme Court in Dore v. Tugwell, 228 La. 807, 84 So.2d 199 (1955):
"In this situation, the question arises as to the duty of the court in construing the statute. It has been many times said that it is the function of the courts to interpret the laws so as to give them the connotation the lawmaker obviously intended and not to construe them so rigidly as to give them preposterous or odd meanings. State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213; Berteau v. Police Jury of Parish of Ascension, 214 La. 1003, 39 So.2d 594 and Webb v. Parish Council of Parish of E. Baton Rouge, 217 La. 926, 47 So.2d 718. The object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result. Bradford v. Louisiana Public Service Commission, 189 La. 327, 179 So. 442; See also City of Shreveport v. Gregory, 186 La. 407, 172 So. 435."
Act 549 of 1980, amending La.C.C. Articles 208 and 209, on proof of filiation of unacknowledged illegitimates, was apparently passed by the legislature in response to the Court of Appeal decision in Succession of Brown, which was later affirmed by the Louisiana Supreme Court. In furtherance of the legislative design to allow proof of filiation by unacknowledged illegitimates in order that they might qualify for inheritance rights, the legislature, by enacting Section 4, provided a grace period during which illegitimates, who would otherwise be precluded, could prove filiation. In our view, it was the intent of the legislature in adopting Section 4 of Act 549 of 1980 to allow all persons affected by the act a period of one year within which to establish filiation of a child. This intention seems manifest when one considers that the following year the legislature again amended the provisions of La.C.C. Art. 209 by enacting Act 720 of 1981 so as to allow any person against whom the time period provided for by the Act would otherwise have accrued a period of one year within which to prove filiation.
Because Section 4 of Act 549 of 1980 was intended to benefit illegitimates such as the plaintiffs, their suit has been timely filed. They have successfully proved their filiation to John D. Payne, and are therefore entitled to a pro rata share of his estate.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to defendants-appellants.
AFFIRMED.
DOMENGEAUX, J., concurs with reasons.
*1360 DOMENGEAUX, J., concurring.
Due to the Supreme Court's recent pronouncement in Succession of Clivens, 426 So.2d 585 (La. Supreme Court Docket No. 82-C-0125), (La.1982, on rehearing La. 1983), I feel that I have no choice but to concur with the majority opinion that Succession of Brown must be retroactively applied to the claims of the plaintiffs in this case. My opinion however has not changed from that indicated in my concurring opinion in Succession of Layssard.[1] It also seems apparent that plaintiffs' suit has been timely filed pursuant to the legislative intent behind the adoption of Section 4 of Act 549 of 1980.
However, I do feel that in the future, we should be very careful in examining evidence introduced to prove the filiation of an illegitimate child to an alleged biological parent in light of recent amendments to La.C.C. Article 209. I feel that these new legislative enactments signal an entirely new approach to the method of proving filiation.
For example, as this Court stated in Fontenot v. Thierry, 422 So.2d 586 (La.App. 3rd Cir.1982) with regard to the line of jurisprudence allowing dual paternity to be proven prior to the new changes to La.C.C. Article 209:
"The Legislature seems to have finally taken a positive step toward eliminating the multiple paternity abuse that has existed in our jurisprudence for a number of years. The line of cases allowing dual paternity to be proven in situations in which the child seeking to demonstrate filiation is already the presumed legitimate child of another man should now be seriously reconsidered in light of this new legislation."
Furthermore, it should be noted that according to La.C.C. Article 209(B), as amended by Act 527 of 1982, the "preponderance of the evidence" standard previously applied in all filiation proceedings has been significantly curtailed:
"A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article."
Had the suit in the case at hand been filed subsequent to the effective date of this new legislation, the plaintiffs would have been required to prove their filiation to John D. Payne by "clear and convincing evidence", since Mr. Payne had died in 1975.
NOTES
[1] LSA-C.C. Art. 919 excluded acknowledged illegitimates from participating in the succession of their father when he is survived by legitimate descendants, ascendants, collateral relatives, or a surviving spouse.
[2] The Supreme Court in Clivens, supra, appears to conclude in its footnote (8) that because of the ambiguities in Section 4 of Act 549 of 1980 that the legislature granted another one year grace period in Act 720 of 1981.
[1] 412 So.2d 135 (La.App. 3rd Cir.1982).