467 So.2d 132 (1985)
Steven Larry PHILLIPS, Plaintiff-Appellee,
v.
Marla Jean Masters PHILLIPS, et al., Defendant-Appellant.
No. 84-351.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
*133 William D. Dyess, Many, for defendant-appellant.
Don M. Burkett, Many, for plaintiff-appellee.
Before GUIDRY, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
This appeal comes on behalf of two minor children, Chad E. Phillips and Landon V. Phillips, defendants in this case. The other defendant, Marla Jean Masters Phillips, is not a party to this appeal. The children's curator ad hoc, appointed by the court to represent them in this action to disavow paternity, appeals the judgment of the trial court denying a peremptory exception of no cause of action and granting to plaintiff, Steven Larry Phillips, a judgment of disavowal. We reverse and render.
The facts are not in dispute. Plaintiff Steven Larry Phillips and defendant Marla Phillips (then, Marla Jean Masters) had been living together for several years when they were married on July 5, 1980. They remained together until sometime in 1982. At that time, without filing for judicial separation, they physically separated.
During 1982, Marla became pregnant. She immediately informed Steven that he was not the father. Steven was not surprised because, in February of 1972, he had a vasectomy and has not been able to father children since that time.
Steven went to see his attorney, who advised him to file for divorce on the basis of adultery. He refused because of an agreement made between Marla and himself. Marla wanted to have the children but she could not afford the hospital costs. *134 Steven agreed to postpone the divorce until after the children were born in order that his insurance, which they had been paying since their marriage, would satisfy the hospital bills. Marla subsequently had twins on March 21, 1983.
The record shows that Steven agreed to this arrangement because of assurances by Marla and his attorney that he could disavow paternity after the children were born. He was assured that a declaration in a petition for divorce stating that he was not the father was "supposed to have taken care of everything."
The petition for divorce was filed by Marla on July 29, 1983. The petition contained a declaration that Steven was not the father of the children born during their marriage and, therefore, the children were not a subject of the divorce action. The record does not show whether Steven was advised by his attorney that an answer need not be filed or whether Steven decided on his own not to respond; but, the result was, Steven filed no answer. On September 26, 1983, a preliminary default was entered against Steven. On September 29, 1983, the default was confirmed and a final divorce between Marla and Steven was ordered by the trial court. No attorney was appointed to represent the children during the divorce proceeding and the judgment made no mention of the children or of Steven's paternity.
On December 14, 1983, Steven filed this action to disavow paternity because Marla informed him that the matter concerning his paternity of the children was not resolved. An attorney, appointed by the court to represent the children, filed an exception of no cause of action declaring that the peremptive period for filing an action to disavow had expired. The trial judge denied the exception and, after a hearing on the merits, granted a judgment of disavowal. The children, through their court appointed counsel, appeal on both points.
Regretfully, under the circumstances in this case, the law requires us to find that the trial judge erroneously overruled appellant's peremptory exception.
La.Civ.Code art. 184 states: "The husband of the mother is presumed to be the father of all children born or conceived during the marriage." Article 184 creates a legal presumption that determinatively attaches a certain significance to certain facts as public policy. See generally, La. Civ.Code art. 2285.[1] In this case, the divorce between Marla and Steven became final on September 29, 1983, over six months after the birth of the twins on March 21, 1983. Clearly, the children were born during their marriage and, therefore, a presumption in law exists that Steven is the father of the children, Chad and Landon. La.Civ.Code art. 184.
Although this presumption is not conclusive, it has historically been one of the strongest presumptions in law. Burrell v. Burrell, 154 So.2d 103, 107 (La.App. 1st Cir.1963).
"On prior occasions the presumption of legitimacy accorded a child born during the existence of a marriage has been declared one of the strongest presumptions known to law. Indeed, the presumption is so strong and conclusive, even the mother is precluded from stigmatizing such a child as illegitimate by contending her lawful husband is not the child's father. In this regard we cite with approval the following language appearing in State v. Randall, 219 La. 578, 53 So.2d 689 [(1951)]:
`In interpreting these codal provisions this court has held on numerous occasions that the right to contest the legitimacy of a child born during marriage is strictly personal to the husband and can be exercised by him only during a fixed period (with the right *135 reserved to his heirs in the event of his death within the delay). When he fails to institute timely the disavowal action such right is extinguished; it can subsequently be exercised by no one; and the presumption of his paternity is absolute.'
....
"... The presumption of legitimacy resulting from birth during the existence of a lawful marriage is absolute and irrefutable (excepting only the right of disavowal under proper circumstances) and precludes application of any rule, principle or theory which would admit of proof that such a child is the offspring of anyone other than the lawful husband of the mother which bore such child."
Id. (citations omitted). While the legislature may have weakened the presumption of legitimacy by amendments in Acts 1976, No. 430, Sec. 1, see, Verneuille v. Verneuille, 438 So.2d 615, 616 (La.App. 4th Cir.), writ refused, 443 So.2d 596 (La.1983), it has not changed the procedural requirements for rebutting that presumption. In Re Murray, 445 So.2d 21, 24 (La.App. 5th Cir.), writ refused, 447 So.2d 1079 (La. 1984). To contest the presumption of legitimacy of children born during marriage, the husband must timely institute his personal action to disavow paternity. Id. No one except the husband can file an action to disavow and no fact, rebutting the presumption of legitimacy of children born during marriage, can be considered unless an action to disavow has been timely filed.
In the present case, the trial judge found, in his oral reasons for judgment, that since neither Marla nor Steven ever considered Steven to be the father, he was not presumed to be the father. Respectfully, we find the trial judge's conclusion is wrong. As shown above, the law presumes Steven is the father of children born during the marriage and the only way to contest the presumption of legitimacy is by Steven timely filing his action to disavow paternity.
La.Civ.Code art. 189 states:
"A suit for disavowal of paternity must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child; but, if the husband for reasons beyond his control is not able to file suit timely, then the time for filing suit shall be suspended during the period of such inability."
Steven filed his action to disavow paternity on December 14, 1983. His action was filed 268 days after the birth of the twins on March 21, 1983. Therefore, Steven's right to disavow paternity was extinguished at the time he filed his action, unless, "for reasons beyond his control," he was prevented from filing his suit timely. La.Civ.Code art. 189.
We are convinced that, even before the children's birth, Steven was fully aware of the possibility of the assertion of his paternity. However, for personal reasons, he decided to postpone his action to disavow until after the children were born and their hospital bills were paid. At that time, he could have either filed his action to disavow or answered the petition for divorce filed by Marla and, in reconvention, asserted his action to disavow. Neither pleading was filed by Steven.
It could be argued that Steven was prevented from timely filing his action because of assurances made by his attorney and by Marla that a declaration in a petition for divorce stating that Steven was not the father of the children born during the marriage was sufficient to disavow paternity. If the assurances were made to defraud Steven, by convincing him that his action to disavow need not be filed, then we would find that he was prevented from filing his action to disavow for reasons beyond his control. However, the record shows no evidence of an attempt to defraud Steven. In this case, it appears that he was merely given bad advice.
The fact that no attorney was appointed to represent the children in the divorce proceeding and that the divorce decree did not grant a judgment for disavowal of paternity, indicates that the trial *136 judge did not consider it an action to determine paternity. Lyons v. Fontenot, 344 So.2d 1068, 1072-73 (La.App. 3rd Cir.1977). However, the court could have considered the question of paternity in the divorce proceeding, if the issue would have been raised by Steven. The petition for divorce was filed by Marla on July 29, 1983. It stated that Steven was not the father of the children born during the marriage and, therefore, the children were not a subject of the divorce action. An answer filed by Steven, requesting that he be granted a judgment of disavowal of paternity, would have timely presented the issue of paternity to the court. No answer was filed despite the fact that a preliminary default was not requested until September 26, 1983; seven days after the peremptive period for bringing an action to disavow paternity had expired. It is clear that Steven failed to answer the petition for divorce for a period of 51 days before the peremptive period expired. The fact that he was incorrectly advised is not the type of reason for which the peremptive period of an action to disavow should be suspended.
Our jurisprudence reflects unwavering dedication to the rule of strict construction of the articles governing disavowal actions. Pounds v. Schori, 377 So.2d 1195, 1200 (La.1979). The purpose thereby is to preserve the family unit and to avoid the stigma of illegitimacy and resultant disinherison accompanying a successful disavowal action. Id. Until such time that the legislature indicates its intention to relax the rules governing disavowal proceedings, we shall continue zealously to guard and to enforce the presumption created by La.Civ.Code art. 184.
For the foregoing reasons, the judgment of the trial court denying appellant's peremptory exception and granting a judgment of disavowal is reversed, and this suit is now ordered dismissed with prejudice. Costs at trial level and on appeal are taxed to the appellee.
REVERSED AND DISMISSED WITH PREJUDICE.
NOTES
[1] This article number was vacated by the amendment and reenactment of Titles III and IV of Book III of the Civil Code of 1870 by Acts 1984, No. 331, effective Jan. 1, 1985. See, now, La.Civ.Code art. 1849. This case, occurring before Jan. 1, 1985, will be decided under the law prior to the latest amendments to Title III and IV of Book III.