553 So.2d 847 (1989)
Ledora McCathen SMITH
v.
Playville Joseph COLE.
No. 89-C-1134.
Supreme Court of Louisiana.
December 11, 1989.
*848 William R. Ary, New Orleans, for defendant-applicant.
Charles R. Grady, New Orleans, for plaintiff-respondent.
COLE, Justice.
The issue is whether a biological father is obligated to provide support for his child notwithstanding the child was conceived or born during the mother's marriage to another person and thus the legitimate child of that other person. In this instance, the mother asserts a filiation and support action against the alleged biological father. He filed the peremptory exception raising the objections of no cause of action and no right of action. The trial court sustained the exception and dismissed the action, invoking La.Civil Code article 184 which provides: "The husband of the mother is presumed to be the father of all children born or conceived during the marriage." The court of appeal, applying the concept of dual paternity, held a biological father has an obligation to support his child. It thus reversed and remanded for further proceedings. 541 So.2d 307 (La.App. 5th Cir. 1989). We affirm.

FACTUAL AND PROCEDURAL HISTORY
Plaintiff, Ledora McCathen Smith, married Henry Smith on March 28, 1970. They had two sons, Henry and Derrick. During the fall of 1974, the Smiths physically separated, never reconciling. Thereafter, plaintiff began her five year cohabitation with defendant, Playville Cole. The child who is the subject of this action, Donel Patrice Smith, was born on December 25, 1975, approximately a year after plaintiff and defendant began living together. The birth certificate names Smith as Donel's father. The Smiths were not divorced until April 5, 1978.
The affidavit of Henry Smith, now a resident of California, avers he is not the biological father of Donel and affirms he never petitioned to disavow her paternity. Smith swears that Cole acknowledged to him his paternity of Donel; and, during late 1976, plaintiff and Cole attempted to influence him into executing certain documents which would allow Cole to change Donel's surname from Smith to Cole, "but that he refused to cooperate with them out of anger and the matter was dropped."
Plaintiff's divorce from Henry Smith was uncontested. His interests were represented by a curator ad hoc because it was not known where he could be found. The divorce petition declared only that "of this marriage, two children were born: Henry Smith, born September 29, 1970 and Derrick Smith, born June 13, 1974." Accordingly, the divorce judgment granted plaintiff "permanent custody of the minor children born of the marriage, namely, Henry and Derrick Smith." The divorce judgment did not mention Donel Patrice Smith.
Plaintiff and Cole ceased their cohabitation in February of 1980. On May 18, 1988 plaintiff brought this action against Cole, in forma pauperis, to prove paternity and obtain child support. The petition claimed that 1) plaintiff and Cole are the natural parents of Donel Patrice Smith, born December 25, 1975 and 2) Cole has acknowledged he is the father of this child by his acts and admissions.
*849 Rather than answering the petition, Cole filed his exception.[1] He claimed that as the Smiths were married when Donel was born and as Henry Smith did not disavow paternity, he is Donel's presumed father. LSA-C.C. art. 184. Citing Burrell v. Burrell, 154 So.2d 103 (La.App. 1st Cir.1963), and Finnerty v. Boyett, 469 So.2d 287 (La.App. 2d Cir.1985), Cole asserted that because Donel has a legitimate father, her mother should not be allowed to bastardize her just to obtain money. In response, plaintiff filed only the previously described affidavit of Henry Smith.
The exception was heard on September 8, 1988, before a hearing officer pursuant to LSA-R.S. 46:236.5(C)(5) and Domestic Rule XII of the 24th Judicial District Court. The trial court sustained the exception on September 16, 1988. Plaintiff appealed the dismissal of her petition, claiming certain children can enjoy dual paternity rights. She argued to the appellate court that even though her former husband is Donel's presumed father, her suit to identify Cole as Donel's biological father for the purpose of obtaining support should not have been dismissed.
The Court of Appeal first determined the petition sets forth a cause of action for which the law provides a remedy, then determined plaintiff is the proper party to bring the action. Referring to the wrongful death action of Warren v. Richard, 296 So.2d 813 (La.1974), the appellate court recognized that persons have been allowed to establish their true parentage even though they enjoyed legitimate filiation to another. The petition was found to state a cause of action because, regardless of the legal father's duty of support, the biological father has a financial responsibility for his progeny. LSA-C.C. art. 240; State in interest of Guillory v. Guillory, 407 So.2d 1327 (La.App. 3d Cir. 1981).
Cole sought review from this court, asserting the mother of a child legitimate by virtue of LSA-C.C. art. 184 was without a right to bastardize her child merely to obtain child support. We granted certiorari to review Cole's claim and the viability of dual paternity in Louisiana following the amendment of the Civil Code's filiation articles by Act 720 of 1981. 544 So.2d 385 (La.1989).

DUAL PATERNITY IN LOUISIANA
Promotion and protection of the family unit were the principal reasons behind Louisiana's historically harsh treatment of illegitimate children. See Note, "All in the Family: Equal Protection and the Illegitimate Child in Louisiana Succession Law," 38 La.L.Rev. 189 (1977). For example, until 1981, Civil Code provisions prohibited fathers with legitimate descendants, ascendants or collaterals, or a surviving spouse, from bequeathing a mortis causa donation to their illegitimate offspring. LSA-C.C. art. 919, repealed by Acts of 1981, No. 919 § 1.[2] Children of maternal adulteries usually escaped the sanctions accorded illegitimates, however, because they were considered the legitimate offspring of their mother's husband. See Succession of Robins, 349 So.2d 276 (La.1977) [discussion of the inequities existing between maternal adulteries and paternal adulteries]; Tannehill v. Tannehill, 261 La. 933, 261 So.2d 619 (1972) [unless the birth of the child has been concealed from the father, disavowal is prohibited when sought because of adultery of the wife, citing LSA-C.C. art. 185].
With the social and legal stigmas which attached to illegitimacy, it is not surprising that the courts rigorously applied the presumption of LSA-C.C. art. 184, that "the law considers the husband of the mother as *850 the father of all children conceived during the marriage." Tannehill v. Tannehill, supra.[3] The policy was to protect innocent children against attacks upon their paternity and the presumption was the strongest known in law. Tannehill v. Tannehill, supra; Mock v. Mock, 411 So.2d 1063 (La. 1982); Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952); Phillips v. Phillips, 467 So.2d 132 (La.App. 3d Cir.1985); Burrell v. Burrell, 154 So.2d 103 (La.App. 1st Cir. 1963). The presumption was so rigorously applied that in Tannehill, which was written in 1972, this court acknowledged it had never allowed a disavowal of paternity (although we recognized two appellate court decisions had permitted disavowels in cases where the children were born more than 300 days after judgments of separation had been rendered). 261 So.2d at 621. Not even Mr. Tannehill's disavowal action succeeded, as the statutory prohibition against disavowal for natural impotence was also found to prohibit disavowal for sterility due to childhood disease.
The Article 184 presumption was not without flaws. While it promoted the policy against bastardizing children, it often failed to conform with reality. A husband, who could not possibly be or who clearly was not the biological father, was nonetheless conclusively presumed to be so. Mock v. Mock, supra; Succession of Mitchell, 323 So.2d 451 (La.1975) [noting appellate decisions that "have been uniformly criticized for their inflexible, unrealistic and unjust application of the presumption of paternity to one born during an undissolved marriage, where the mates have long since been living separate and apart and where the mother has been living in stable union with another, who is the actual biological father of the children."]. Consequently, in an attempt to moderate the prevailing statutory and jurisprudential rules, on the recommendation of the Louisiana State Law Institute, the Legislature amended the Civil Code articles on paternity by Act 430 of 1976. Mock v. Mock, supra. These codal amendments made the "irrebuttable" presumption of Article 184 rebuttable. Id.;[4]Phillips v. Phillips, 467 So.2d 132 (La.App. 3d Cir.1985); In re Murray, 445 So.2d 21 (La.App. 5th Cir. 1984), writ den., 447 So.2d 1079 (La.1984); see also Acts 1989, No. 790 amending LSA-C.C. arts. 187, 188. But the amendments did not alter the rule that only the husband or his heir may disavow paternity. LSA-C.C. arts. 187, 190.
Direct legislative policy decisions were not the only encroachments on the Article 184 presumption. Indirect attacks, from interest groups such as children entitled to the presumption of legitimacy, from the state, and from biological fathers, also made an impact. The first impeller, Warren v. Richard, 296 So.2d 813 (La.1974), introduced to Louisiana the notion of dual paternity and found Article 184's presumption did not preclude an illegitimate child from recovering for the wrongful death of her biological father though, at the same time, she was also the legitimate child of another man under the law. The jurisprudential *851 trend which followed allowed legitimate children to establish their true parentage, notwithstanding the legal presumptions of LSA-C.C. art. 184, et seq. Griffin v. Succession of Branch, 479 So.2d 324 (La. 1985), rehearing den.; Malek v. Yekani-Fard, 422 So.2d 1151, 1154 (La.1982) [the mother's "marital status is irrelevant except for any weight it may have at trial in proving or disproving filiation. `[I]t is the biological relationship and dependancy which is determinative of the child's rights in these cases, and not the classification into which the child is placed by the statutory law of the State.' Warren v. Richard, 296 So.2d 813 at 817 (La., 1974)."]; Succession of Mitchell, 323 So.2d 451 (La. 1975); Starks v. Powell, 552 So.2d 609 (La. App. 2d Cir.1989); Thomas v. Smith, 463 So.2d 971 (La.App. 3d Cir.1985); Succession of Levy, 428 So.2d 904 (La.App. 1st Cir.1983); IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2d Cir. 1982), writ den., 423 So.2d 1150 (La.App. 1st Cir.1983).
This jurisprudential attitude spawned the state's paternity and support actions against biological fathers. Consequently, regardless of the existence of a legal or presumptive father, the state often succeeded in its criminal non-support actions against biological fathers. State in interest of Poche v. Poche, 368 So.2d 175 (La. App. 4th Cir.1979), writ den., 370 So.2d 577 (La.1979) ["It sufficed to simply determine that the child was in fact the biological child of the alleged father. The fact that the law considered the child to be the legitimate child of another will not alter the result and `cannot deprive her of a right which illegitimate children generally may have ...,'" citing Warren v. Richard, supra.].
Biological fathers were the third group to impact on the presumption. When they have shown an actual relationship with their illegitimate child, biological fathers have received substantial protection and recognition of their due process and substantive rights through the United States Supreme Court constitutional interpretations. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), rehearing den., 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978); Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) [the existence or nonexistence of a substantial relationship between parent and child is a relevant criterion in evaluating both the rights of the parent and the best interest of the child]; but see Michael H. v. Gerald D., ___ U.S. ___, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989), rehearing den., ___ U.S. ___, 110 S.Ct. 22, 106 L.Ed.2d 634 (1989) [due to the legal presumption of paternity and the extant marital union, the biological father who had established a relationship with his child did not possess due process liberty interests to obtain parental prerogatives]. Similarly, Louisiana courts, citing federal cases, determined the failure of the presumptive father to timely disavow would not conclusively operate to deny a biological father his right to avow paternity. Finnerty v. Boyett, 469 So.2d 287 (La.App. 2d Cir.1985); Burr v. Blue, 454 So.2d 315 (La.App. 3d Cir.1984), writ den., 461 So.2d 304 (La. 1984). Cf. Lamana v. LeBlanc, 526 So.2d 1107 (La.1988); In re Necaise Applying for Adoption, 544 So.2d 1197 (La.App. 5th Cir.1989). Interpreting Article 184's presumption as irrebuttable would deprive biological fathers of the opportunity to develop a relationship with their child and thereby deprive them of their due process rights. Finnerty v. Boyett, supra. Consequently, biological fathers have been allowed to bring avowal actions despite the Article 184 presumption. Id.; Durr v. Blue, supra.
Through these avenues, the legal fiction, that the mother's husband was the only father the law would recognize, was being wittled down. Then in 1981, the legislature followed the recommendation of the Louisiana State Law Institute and amended the filiation provisions in Civil Code articles 208 and 209. While true parentage and dual paternity were recognized as being consistent *852 with the 1980 version of these articles,[5] some thought it unclear whether Act 720 of 1981[6] put an end to the presumptively legitimate child's right to establish his or her dual parentage. Griffin v. Succession of Branch, supra.
Act 720's changes were interpreted by some commentators and courts to "impl[y] that the child who enjoys legitimate filiation, or is legitimated formally or acknowledged cannot institute the proceeding to establish filiation...." (emphasis in the original) Spaht, "Developments in the Law, 1980-1981: Persons," 42 La.L.Rev. 403, 405-406 (1982) (but see n. 24); Fontenot v. Thierry, 422 So.2d 586 (La.App. 3d Cir. 1982), writ den., 427 So.2d 868 (La.1983) [did not apply Act 720 of 1981 retrospectively; therefore, allowed mother to bring paternity and child support action against the biological father notwithstanding the Article 184 presumption]; IMC Exploration Co. v. Henderson, supra; see also Thomas v. Smith, 463 So.2d 971 (La.App. 3d Cir.1985) [did not apply Act 720 retrospectively; allowed two children enjoying the Article 184 presumption of legitimacy to establish their true parentage]; Durr v. Blue, supra; Alex v. Heirs of Alex, 479 So.2d 664, 666 (La.App. 3d Cir.1985) (Domengeaux, J. concurring); State, through DHHR v. Williams, 471 So.2d 1064, 1067 (La.App. 3d Cir.1985) (Domengeaux, J. concurring); State v. Jefferson, 448 So.2d 907, 909 (La.App. 3d Cir.1984) (Domengeaux, J. concurring); Succession of Payne v. Payne, 426 So.2d 1355, 1360 (La.App. 3d Cir. 1983) (Domengeaux, J. concurring). *853 Their interpretation was bolstered by the Act's inclusion of an amendment to the Child Support Enforcement Program, LSA-R.S. 46:236.1 (F). The statute, as amended, authorized the Department of Health and Human Resources to institute filiation proceedings against alleged biological fathers notwithstanding the existence of a presumptive father. From the DHHR authorization, combined with the language changes to Article 209, it was inferred that Act 720 intended to proscribe children with legitimate filiation from establishing dual paternity. Id.
The operative language of the 1980 version of Article 209 read: "... any child may establish filiation, regardless of the circumstances of conception ..." LSA-C.C. art. 209, as amended by Act 549 of 1980. This phrase, however, was deleted from Article 209 by Act 720. And, included in the replacement language was the phrase, "[a] child not entitled to legitimate filiation ... must prove filiation ..." The lower courts and commentators, therefore, concluded that when reading the Article 209 changes together with the LSA-R.S. 46:236.1 (F) amendment, "the discernible legislative intent is that a child presumed to be that of the husband of the mother may not institute a proceeding to establish filiation to another man." Spaht, 42 La.L. Rev. 403, 407; Fontenot v. Thierry, supra; IMC Exploration Co. v. Henderson, supra; see also Thomas v. Smith, supra. In Griffin v. Succession of Branch, supra, however, this court determined we could not subscribe to such a wholesale preclusion of children who may enjoy legitimate status, but wished to establish their true parentage.
In Griffin, we adopted the First Circuit's interpretation of Act 720 as expressed in Succession of Levy, 428 So.2d 904 (La.App. 1st Cir.1983), that the phrase "a child not entitled to legitimate filiation" means a child who is not entitled to legitimate filiation to the parent to whom he is attempting to prove filiation. 479 So.2d at 327. Cf. State, through DHHR v. Hinton, 515 So.2d 566 (La.App. 1st Cir.1987); Cormier v. Cormier, 479 So.2d 1069 (La.App. 3d Cir.1985); Finnerty v. Boyett, supra. The legal relationship between the child and the parent with whom the child is seeking to prove his filiation determines whether the child is relieved of the obligations under Article 209, because it is this relationship which determines if the child falls into one of the classes enumerated in that article. Griffin v. Succession of Branch, supra. Moreover, this interpretation is supported by the legislative history of Act 720.
The Louisiana State Law Institute's recommended amendments for Articles 208 and 209 were introduced as House Bill No. 818 of 1981. The Law Institute's proposals were intended to address the potential succession problems created by Succession of Brown, 388 So.2d 1151 (La.1980).[7] No evidence suggests the recommendations were intended to prohibit legitimate children from establishing their true parentage.
Approximately two weeks prior to the introduction of House Bill No. 818, the Council of the Louisiana State Law Institute briefly discussed a request from the DHHR for the adoption of an Article 209 presumption to aid the DHHR's child support collection efforts. Minutes, Louisiana State Law Institute Council Meeting, April 10, 1981. It was suggested by the DHHR that proof of a man having lived in open concubinage with the mother of a child at the time of conception would raise the presumption that he was the child's father. Council members, however, considered it unwise to adopt this proposal without first giving careful consideration to the proposal's *854 effect upon family relationships generally. As a result, the proposal was rejected. Id.
The portion of Act 720 amending LSA-R.S. 46:236.1 was added to House Bill No. 818 by the House on June 9, 1981, the day before the bill was received by the Senate. The amended bill merely codified jurisprudence already recognizing the state's right to bring paternity actions against biological fathers despite the Article 184 presumption of paternity. Finnerty v. Boyett, supra; State in interest of Poche v. Poche, supra. Thus, it appears the amendment to LSA-R.S. 46:236.1 (F) was made solely to satisfy the interests of the DHHR. It was not intended to imply that children who enjoyed legitimate filiation had lost their right to establish dual paternity or otherwise limit the movement sparked by Warren v. Richard.

EFFECTS OF DUAL PATERNITY
Recognition of actual paternity, through filiation actions brought by the legitimate child, the biological father or the state, does not affect the child's statutory classification of legitimacy. Consequently, this paternity and support action will not alter Donel Smith's status as the legitimate offspring of her mother's former husband, Henry Smith. LSA-C.C. art. 184 et seq.
Through the presumption of Article 184, which extends to all children born or conceived during the marriage, and the expiration of the peremptive period of Civil Code art. 189, Donel is conclusively presumed to be Smith's legitimate offspring. The disavowal action was personal to Smith and only he or his heirs had the right to disavow Donel's paternity. LSA-C.C. arts. 187, 190; In re Murray, supra. His failure to do so timely established Donel as his legal and legitimate child. LSA-C.C. arts. 184, 189. The legal tie of paternity will not be affected by subsequent proof of the child's actual biological tie. Legitimate children cannot be bastardized by succeeding proof of actual parentage.
The Article 184 presumption will not be extended beyond its useful sphere. The presumption was intended to protect innocent children from the stigma attached to illegitimacy and to prevent case-by-case determinations of paternity. It was not intended to shield biological fathers from their support obligations. Cf. State, through DHHR v. Hinton, supra; State in interest of Poche v. Poche, supra; State in interest of Guillory v. Guillory, supra. The presumed father's acceptance of paternal responsibilities, either by intent or default, does not enure to the benefit of the biological father. It is the fact of biological paternity or maternity which obliges parents to nourish their children. The biological father does not escape his support obligations merely because others may share with him the responsibility. Biological fathers are civilly obligated for the support of their offspring. Starks v. Powell, supra. They are also criminally responsible for their support. LSA-R.S. 46:236.1(F); State, through DHHR v. Hinton, supra; State in interest of Guillory v. Guillory, supra; see also Malek v. Yekani-Fard, supra, and State v. Jones, 481 So.2d 598 (La.1986).
Moreover, because of his actual relationship with Donel, developed when he and plaintiff lived together as a family unit, defendant may have parental rights which are constitutionally protected. Since Henry Smith's failure to disavow paternity would not preclude defendant from bringing an avowal action, it would be unjust to construe the presumption so as to provide defendant with a safe harbor from child support obligations. Articles 208 and 209 give the child or the child's mother, the right to bring a filiation proceeding. O'Bannon v. Azar, 506 So.2d 522 (La.App. 1st Cir.1987). Further, as the child is in necessitous circumstances, it appears to be in her best interest to recognize the biological tie. Such recognition results in defendant being obligated to provide his biological child with support.
In summary, Louisiana law may provide the presumption that the husband of the mother is the legal father of her child while it recognizes a biological father's actual paternity. When the presumptive *855 father does not timely disavow paternity, he becomes the legal father. A filiation action brought on behalf of the child, then, merely establishes the biological fact of paternity. The filiation action does not bastardize the child or otherwise affect the child's legitimacy status. The result here is that the biological father and the mother share the support obligations of the child.
The question of whether the "legal" father in this case also shares the support obligation is not before the court. We decline for now to hold the legal father will, in all factual contexts, be made to share the support obligations with the biological father and the mother.[8]

NO CAUSE OF ACTION
Plaintiff's petition "To Prove Paternity and to Obtain Child Support" alleges 1) plaintiff and Cole are the natural parents of Donel Patrice Smith born December 25, 1975 and 2) Cole has acknowledged that he is the father of this child by his actions and his oral admissions. Cole claims these allegations do not set forth a cause of action because Donel is the legitimate child of Henry Smith, who was married to plaintiff at the time of Donel's birth. LSA-C.C. art. 184. As Smith did not disavow paternity, he is the presumed father. LSA-C.C. art. 184, et seq.
The purpose of the peremptory exception raising the objection of no cause of action is to determine the legal sufficiency of the petition. No evidence may be offered at any time to support or controvert the exception. LSA-C.C.P. art. 931. The exception is tried on the face of the pleadings and the court accepts the facts alleged in the petition as true, determining whether the law affords any relief to plaintiff if those facts are proved at trial. The exception must be overruled unless the plaintiff has no cause of action under any evidence admissible, based upon the pleadings. LSA-C.C.P. art. 927; Robinson v. North American Royalties, Inc., 470 So.2d 112 (La. 1985); Darville v. Texaco, Inc., 447 So.2d 473 (La.1984).
The allegations are that defendant is the natural father of Donel; he has acknowledged his paternity of her; and plaintiff, as Donel's mother, seeks child support. Accepting the facts alleged as true, the face of the petition states a cause of action for which the law affords relief. Regardless of the child's status as the legitimate child of Henry Smith, if plaintiff proves these facts at trial, she will be entitled to relief.
For the reasons assigned, we affirm the judgment of the court of appeal. The trial court's ruling, sustaining the peremptory exception raising the objection of no cause of action, was properly reversed. All costs are to be assessed against applicant.
AFFIRMED.
DENNIS, J., concurs with reasons.
NOTES
[1] At trial and on appeal, Cole improperly combined the objections of no right of action and no cause of action, treating them as one. The appellate court addressed the objections separately. This writ addresses only the objection of no cause of action.
[2] Article 919 formerly provided: Illegitimate children are called to the inheritance of their father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion of the state. In all other cases, they can bring an action against their father or his heirs for alimony, the amount of which shall be determined, as is directed in the title: Of Father and Child.
[3] See, LSA-C.C. arts. 184-192 prior to amendment by Acts of 1976, No. 430, § 1. Of particular interest, article 185, formerly provided: The husband can not by alleging his natural impotence, disown the child; he can not disown it even for cause of adultery, unless its birth has been concealed from him, in which case he will be permitted to prove that he is not the father.
[4] In the background of these changes the family unit concept, which was aimed at the preservation of family values, had begun to succumb to the equal protection rights of illegitimate children. See 38 La.L.Rev. 189. In cases such as Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); and Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the United States Supreme Court established that the states could not deny illegitimate children equal protection by invidiously discriminating against them through the denial of substantial benefits accorded children generally. In our 1974 Constitution, Louisiana adopted an equal protection clause: "No person shall be denied the equal protection of the laws.... No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations...." LSA-Const. Art. 1, § 3. Cf. Succession of Brown, 388 So.2d 1151 (La. 1980); Succession of Robins, 349 So.2d 276 (La. 1977). Thus, the need to protect children against the legal stigmas attached to illegitimacy was being weathered away.
[5] Section 1 of Act 549 of 1980 amended Articles 208 and 209 of the Louisiana Civil Code as follows:

Art. 208. Authorization to prove filiation. Illegitimate children, who have not been acknowledged as provided in Article 203, may be allowed to prove their filiation.
Art. 209. Methods of proving filiation. 1. An illegitimate child may be entitled to a rebuttable presumption of filiation under the provisions of this Article. Or any child may establish filiation, regardless of the circumstances of conception, by a civil proceeding instituted by the child or on his behalf in the parish of his birth, or other proper venue as provided by law, within the time limitation prescribed in this Article.....
[6] Section 1 of Act 720 of 1981 amended Articles 208 and 209 of the Louisiana Civil Code as follows:

Art. 208. Requirement to prove filiation
In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must institute a proceeding under Article 209.
Art. 209 Proof of filiation
A. A child not entitled to legitimate filation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
* * * * * *
C. The right to bring this proceeding is heritable.
* * * * * *
Section 2 of Act 720 provided that: Any person against whom the time period provided in this Act would otherwise have accrued except for the provisions of this Section shall have one year from its effective date to bring a proceeding to establish filiation of a child. If no such proceeding is timely instituted, such filiation may not thereafter be established.
Section 3 provided that: Subsection F of Section 236.1 of Title 46 of the Louisiana Revised Statutes of 1950 is hereby amended and reenacted to read as follows:
§ 236.1. Family and child support programs
* * * * * *
F. The department, except when it is not in the best interest of the child, may without the necessity of written assignment, subrogation, tutorship proceedings, separation proceedings, or divorce proceedings, take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section, in any court of competent jurisdiction, to obtain an order, judgment, or agreement of support against the responsible person in any case in which an AFDC grant has been made for or on behalf of a child or children or in any case in which the department has agreed to provide services for a non-AFDC applicant. The amount of such support shall be set only by order of the court or by the consent of the parties, but in either case the department shall be designated as payee. A separate and distinct cause of action in favor of the department is hereby created, and suits brought under this provision need not be ancillary to or dependent upon any other legal proceeding.
* * * * * *
[7] Succession of Brown, supra, declared former LSA-C.C. art. 919 unconstitutional under the equal protection clause of the Fourteenth Amendment to the United States Constitution and Art. I, § 3 of the Louisiana Constitution of 1974. As amended and reenacted by Act 607 of 1979, Article 919 provided:

Art. 919. Illegitimate children are called to the inheritance of their father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the state.
In all other cases, they can only bring an action against their father or his heirs for alimony, the amount of which shall be determined, as is directed in the title: Of Father and Child.
[8] The best interest of the child should be considered in determining whether the court in a given case will impose the obligation of support on the person who, by virtue of Article 184, is conclusively presumed to be the father of the child. While LSA-C.C. art. 227 may provide the basis for such an imposition on the legal father, the fact that there is a biological father capable of providing support cannot equitably be ignored.