775 So.2d 1107 (2000)
YOLANDA F.B.
v.
ROBERT D.R.
No. W00-958.
Court of Appeal of Louisiana, Third Circuit.
December 6, 2000.
Rehearing Denied January 24, 2001.
Henry R. Liles, Liles & Redd, Lake Charles, LA, Counsel for Defendant-Applicant Robert D.R.
Nathan Cormie, Attorney at Law, Lake Charles, LA, Counsel for Plaintiff-Respondent Yolanda F.B.
(Court composed of Judge ULYSSES GENE THIBODEAUX, Judge OSWALD A. DECUIR, and Judge JIMMIE C. PETERS.)
*1108 DECUIR, Judge.
This is a suit to establish paternity. The defendant, Robert R., filed exceptions of res judicata and no right of action. The district court dismissed the res judicata exception at the hearing. The exception of no right of action was taken under advisement. After the submission of briefs, the trial court denied the exception of no right of action. When Robert R. applied for writs challenging the denial of the exception of no right of action, we called up the case for briefing, arguments, and an opinion. We now deny the writ application, finding no error in the trial court's rulings.

FACTS
The minor child, D.S., was born to Yolanda B. on February 6, 1986. No father is named on the original birth certificate. Approximately three months after D.S. was born, David S., the fiancé of Yolanda B., formally acknowledged D.S. by an Act of Acknowledgment. On May 14, 1987, Yolanda B. contacted the Department of Social Services Child Support Enforcement section to collect child support from David S. On April 30, 1987, David S. entered into a voluntary stipulation to pay child support for D.S. On April 27, 1988, Yolanda B. filed a petition for filiation or paternity and rule for child support seeking a formal judgment of paternity against David S. On May 10, 1988, David S. filed an answer admitting that he was the father of D.S. A judgment was entered on June 13, 1988, declaring that D.S. is the natural child of David S., awarding David S. joint custody, and ordering child support by military allotment. On March 18, 1996, Yolanda B. filed a contempt rule against David S., alleging he was in arrears on child support. David S. answered and alleged that he was not the father. At the same time, in a separate proceeding, David S. filed a petition for disavowal of paternity seeking to disavow D.S. on the basis of Yolanda B.'s fraud and misrepresentation. The proceedings were consolidated. Yolanda B. filed an exception of res judicata, and the trial court maintained the exception, dismissing the disavowal action with prejudice.
On July 20, 1999, Yolanda B. filed a petition to establish paternity, for child custody and for medical compliance against Robert R., alleging he is actually the natural father of D.S. Robert R. answered denying the allegation and filed exceptions of res judicata and no right of action. The trial court dismissed the exception of res judicata and, after reviewing briefs on the issue, the exception of no right of action as well. Robert R. applied for supervisory writs to this court, challenging the denial of the exception of no right of action. We called the case up for briefing, arguments, and opinion.

NO RIGHT OF ACTION
The exception of no right of action is used to determine whether the petitioner belongs to the particular class to which the law grants a remedy for the particular harm alleged. Arcadian Corp. v. Olin Corp., 97-174 (La.App. 3 Cir. 6/18/97); 698 So.2d 9. Its function is to terminate the suit brought by one who has no judicial right to enforce the right asserted in the lawsuit. Kahn v. Jones, 95-259 (La.App. 3 Cir. 11/2/95); 664 So.2d 700. In other words, the exception of "no right of action raises the question of whether plaintiff has an interest in the subject matter of the litigation." LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727, 730 (1966).
Robert R. contends that a person who has already judicially established filiation to one person cannot continue to avail himself of the filiation action against other persons. In the instant case, he directs the court's attention to the fact that D.S.'s legal paternity has been established on two occasions. In the first instance, he argues that the act of acknowledgment executed by David S. had the legal effect of a judgment of paternity. See La.Civ.Code arts. 200, 203. Moreover, he points out that David S. was judicially determined to be *1109 the father of D.S. by formal judgment of paternity in 1988. Accordingly, he argues that Yolanda B. has no legal standing to initiate a second filiation action on behalf of D.S.
In Smith v. Cole, 553 So.2d 847, 854 (La.1989) the supreme court said:
Through the presumption of Article 184, which extends to all children born or conceived during the marriage, and the expiration of the peremptive period of Civil Code art. 189, Donel is conclusively presumed to be Smith's legitimate offspring. The disavowal action was personal to Smith and only he or his heirs had the right to disavow Donel's paternity. LSA-C.C. arts. 187, 190; In re Murray [445 So.2d 21 (La.App. 5 Cir.), writ denied, 447 So.2d 1079 (La. 1984)]. His failure to do so timely established Donel as his legal and legitimate child. LSA-C.C. arts. 184, 189. The legal tie of paternity will not be affected by subsequent proof of the child's actual biological tie. Legitimate children cannot be bastardized by succeeding proof of actual parentage.
The Article 184 presumption will not be extended beyond its useful sphere. The presumption was intended to protect innocent children from the stigma attached to illegitimacy and to prevent case-by-case determinations of paternity. It was not intended to shield biological fathers from their support obligations. Cf. State, through DHHR v. Hinton, [515 So.2d 566 (La.App. 1 Cir. 1987)]; State in Interest of Poche v. Poche, [368 So.2d 175 (La.App. 4 Cir.), writ denied, 370 So.2d 577 (La.1979)]; State in interest of Guillory [State, Through Dept. of Health & Human Res.] v. Guillory, [407 So.2d 1327 (La. App. 3 Cir.1981)]. The presumed father's acceptance of paternal responsibilities, either by intent or default, does not enure to the benefit of the biological father. It is the fact of biological paternity or maternity which obliges parents to nourish their children. The biological father does not escape his support obligations merely because others may share with him the responsibility. Biological fathers are civilly obligated for the support of their offspring. Starks v. Powell, [552 So.2d 609 (La.App. 2 Cir. 1989)]. They are also criminally responsible for their support. LSA-R.S. 46:236.1(F); State, Through DHHR v. Hinton, supra; State in interest of Guillory [State, Through Dept. of Health & Human Res.] v. Guillory, supra; see also Malek v. Yekani-Fard, [422 So.2d 1151 (La.1982)], and State v. Jones, 481 So.2d 598 (La.1986).
The court noted further that Louisiana courts, relying on federal jurisprudence, have determined that the failure of a presumptive father to disavow would not deny a biological father the right to avow paternity. Id. In addition, the court concluded that interpreting the presumption of Article 184 as irrebuttable would deprive biological fathers of their due process rights. Id. Finally the court reasoned that since the failure to disavow paternity would not preclude the biological father from bringing an avowal action, it would be unjust to construe the presumption so as to provide the biological father with a safe harbor from child support obligations. Id. Accordingly, "Articles 208 and 209 give the child or the child's mother, the right to bring a filiation proceeding." Id. at 854.
Robert R. correctly argues that the court's decision in Smith dealt with the Article 184 presumption of paternity and not with an actual judicial determination of paternity. However, after careful consideration we find the court's reasoning in Smith to be applicable to this case. In Smith, the court noted that the failure of the presumed father to timely assert his right to disavow established him as the legal father of the child. In the case before us, a court has established another man as the legal father. In both cases, the biological father retains the right to establish paternity, and, therefore, the court's *1110 finding that justice requires the child to have the same right is also applicable.
The issue that raises concern is the fact that the mother, on behalf of D.S., has previously availed herself of the courts to establish filiation. We are cognizant of Robert R.'s argument that unscrupulous parties could make a mockery of the courts by bringing repeated paternity suits. However, we find this result to be unlikely in most cases where paternity can be conclusively established with medical evidence. Only in cases like the one before us, where the status of a party as legal father is based on his own admission, will the court be vulnerable to abuse by unscrupulous parties. Moreover, the courts are not without authority to deal with frivolous abuses of the system. Accordingly, we find that this risk of abuse is outweighed by the right of the child to establish paternity. The trial court's ruling denying the exception of no right of action was proper.

CONCLUSION
For the foregoing reasons, the application for supervisory writs is denied. The costs of this writ proceeding are taxed to Robert R.
WRIT DENIED.
THIBODEAUX, J., dissents and assigns reasons.
THIBODEAUX, J., dissenting.
The mother of the minor child is not motivated by a desire to establish the "true paternity" of her son; rather, her attempt to establish yet another biological father for her child is a subterfuge for less benevolent reasons. This is not a case where a child wants to establish a biological relationship in addition to a legal relationship. It is one where the mother of the child wants to establish the legal existence of two biological fathers.
The majority's reliance on Smith v. Cole, 553 So.2d 847 (La.1989) to establish a right of action on behalf of the mother is misplaced. Smith v. Cole dealt with the issue of whether a biological father was obligated to support his child despite the child being conceived or born during the mother's marriage to another person, making that child the legitimate child of the husband. In Smith, the mother of the child was still married to her husband when the child was conceived and born. They were not living together. The child was the legal and presumed legitimate child of the estranged father under La.Civ.Code art. 184. Smith v. Cole recognized dual paternity. In my view, dual paternity means legal and biological relationships, not two biological relationships. Indeed, Smith said that "the legal tie of paternity will not be affected by subsequent proof of the child's actual biological tie." Id. at 854. (Emphasis supplied). In focusing on La. Civ.Code art. 184, Smith concluded that Article 184 was intended to protect against the stigmatizing effects of illegitimacy. That concern is not present in this case. The child was born out of wedlock and the mother was not married and did not marry the father against whom she has a judgment of paternity nor is she married to Robert R. who she is now suing to prove yet another biological tie.
Unlike Smith, this case does not involve a presumed father. Rather, a judgment exists establishing biological father status. This is a judgment which was upheld against the father's, David S.', attempt at disavowal. Indeed, the mother of this minor child quickly asserted her legal rights (at which she's pretty adept) and filed an exception of res judicata and dismissed David S.' attempts to disavow the child.
The majority recognizes the risk of abuse inherent in such action by the mother. However, it finds the risk of abuse is outweighed by the right of the child to establish paternity. However, paternity has already been established. In 1988, Ms. B., then Ms. LeBlanc, filed a verified petition saying that she "and defendant (David S.) entered into a relationship which resulted in the conception of a child which was born on February 6, 1986." *1111 David S. filed an answer admitting the allegations. On June 13, 1988, the district court signed a judgment which stated that "the child, D.S., is declared the natural child of the union between Yolanda B. and David S." (Emphasis supplied). Now, Ms. B. comes into court in 1999 and says that she had "an intimate relationship with Robert R., defendant herein, and as a result, the minor child, D.S., born February 6, 1986, was born to Yolanda B. and Robert R...." She should not have this right. She has already legally established that David S. is the natural and biological father. She should be estopped from coming back into court eleven years later to assert that someone else is now the natural father. Suppose Robert R. acknowledges that the allegations are true, as did David S., and a judgment establishing him as the second biological father is signed? Will Ms. B. now be able to come back into court and point the finger at yet another individual who had a sexual relationship with her?
Ms. B. does not have a judicially assertable interest in bringing this action. The exception of no cause of action should have been granted.
For the foregoing reasons, I respectfully dissent.