855 So.2d 913 (2003)
STATE of Louisiana in the interest of Carrie WILSON, Plaintiff-Appellee,
v.
Claude J. WILSON, Defendant-Appellant.
No. 37,674-JAC.
Court of Appeals of Louisiana, Second Circuit.
September 24, 2003.
Sam Henry, IV, for Appellant.
Jerry L. Jones, District Attorney, Brenda M. Howell, Assistant District Attorney, for Appellee.
*914 Before CARAWAY, DREW and TRAYLOR (Pro Tempore), JJ.
TRAYLOR, Judge Pro Tempore.
Claude Wilson appeals the judgment of the Fourth Judicial District Court, Parish of Ouachita, in favor of the State of Louisiana, through the Department of Social Services (the "State"), ordering him to pay child support for Carrie Wilson of whom he is the biological father. For the following reasons, we affirm.

FACTS
On June 24, 1990, Hollis Wilson ("Hollis") married Angela Wilson ("Angela"), who, at the time, was pregnant with a child she had conceived with Hollis's brother, Claude Wilson ("Claude"). Hollis was aware that Angela was pregnant when they married. On June 29, 1990, Carrie Wilson ("Carrie") was born. Hollis was listed on Carrie's birth certificate as her father, and, in fact, has always acted as her father. Hollis never sought to disavow his paternity of Carrie and always supported herClaude never contributed to her support. As far as Carrie knew, Claude was her uncle and not her biological father. In 1999, Hollis and Angela divorced.
This appeal stems from the State's Rule for Child Support instituted against Claude for the support of Carrie.[1] Claude had previously acknowledged his paternity of Carrie, as well as his rights and responsibilities as her father.[2] Following the August 2002 hearing on the State's rule, the trial court determined that Claude's support obligation for Carrie would be $339.00 per month, and this appeal by Claude ensued.

DISCUSSION
On appeal, Claude argues that the trial court erred in ordering him to pay child support for Carrie, and alternatively, that the child support award, if not in error, was excessive. For the following reasons, we determine that Claude's assignments of error are without merit.
Louisiana has a long line of jurisprudence recognizing a scenario where a child might have a biological father as well as a legal presumptive father. The concept of "dual paternity" allows a child to seek support from the biological father notwithstanding that the child was conceived or born during the mother's marriage to another man, and therefore presumed to be the legitimate child of the marriage. State, Dept. of Social Services, Office of Family Support ex rel. Munson v. Washington, 32,550 (La.App.2d Cir.12/08/99), 747 So.2d 1245, citing Warren v. Richard, 296 So.2d 813 (La.1974); State, Dept. of Social Services, Office of Family Support v. Williams, 605 So.2d 7 (La.App. 2d Cir.1992).
Smith v. Cole, 553 So.2d 847 (La. 1989) is the seminal case regarding the duty of a biological father in cases where another person is presumed to be the legal father. In Smith, the court reasoned that:
The presumed father's acceptance of paternal responsibilities, either by intent *915 or default, does not enure to the benefit of the biological father. It is the fact of biological paternity or maternity which obliges parents to nourish their children. The biological father does not escape his support obligations merely because others may share with him the responsibility. Biological fathers are civilly obligated for the support of their offspring. (Emphasis added).
Id. at 854.[3] As we stated previously in State ex rel. Munson, "[T]he presumption of paternity ... is not intended to allow biological fathers to avoid their support obligation." Id. at 1247.
Additionally, La. R.S. 46:236.1(F)(1) empowers the State, under certain circumstances, as it did in the case sub judice, to file a suit to establish filiation and fix child support. Specifically, the statute authorizes the State to:
... take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section ... A separate and distinct cause of action in favor of the department is hereby created, and suits brought under this provision need not be ancillary to or dependent upon any other legal proceeding. (Emphasis added).
The fact that Claude has played no role in Carrie's life as her father is of no moment in the determination of whether he is responsible for her support. The only pertinent determination is whether Claude is Carrie's biological father, which the DNA testing conclusively bears out. So considering, in this case, it is apparent that Claude, as Carrie's biological father is responsible for at least some share of Carrie's support. See Jones v. Rodrigue, XXXX-XXXX, XXXX-XXXX (La.App. 1st Cir.11/03/00), 771 So.2d 275. On this point the trial court did not err.
Nor do we find that the trial court erred in its determination of the amount of support for which Claude was responsible. At the conclusion of the hearing and after determining that Claude was responsible for a share of Carrie's support, the trial court contemplated various means for calculating that share. Ultimately, the trial court combined the adjusted gross incomes of Claude and Hollis, and with that sum, along with Angela's income, utilized Louisiana's child support guidelines[4] to derive the paternal support obligation of $519.88.[5] To determine Claude's portion of support, *916 the trial court compared Claude's and Hollis's percentage share of income, and determined that Claude was responsible for 65 percent of the paternal obligation, or $339.00 per month. We do not believe this amount to be excessive, as argued by Claude.
In considering the means for calculating Claude's support obligation, the trial court correctly noted that the actual calculation of child support in a dual paternity case is not addressed by the guidelines or in the jurisprudence. Notwithstanding the lack of statutory or jurisprudential guidance, we conclude that the trial court properly determined Claude's share of the paternal responsibility, and moreover, the calculation was performed in the spirit of the guidelines. Notably, La. R.S. 9:315.2 addresses the calculation of the basic child support obligations of mothers and fathers, and subsection C directs that "[t]he parties shall combine the amounts of their adjusted gross incomes. Each party shall then determine by percentage his or her proportionate share of the combined amount. The amount obtained for each party is his or her percentage share of the combined adjusted gross income." Additionally, we have previously stated that "[c]hild support is to be granted in proportion to the needs of the children and the ability of the parents to provide support."[6]Reeves v. Reeves, 36,259 (La.App.2d Cir.07/24/02), 823 So.2d 1023, 1026. If the intent of the guidelines is to fairly apportion each parent's support obligation as to a mother and father by considering their proportionate incomes, we cannot see how a calculation similarly made where two fathers exist could not be concluded to be equally fair. Such a calculation was in keeping with the spirit of the guidelines. Thus, we conclude that the pro rata child support obligation assigned to Claude by the trial court was within its discretion and, moreover, not excessive.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed, with court costs being assessed to Claude Wilson.
AFFIRMED.
NOTES
[1] The legal proceedings in this matter have been drawn out, making for a somewhat confused record. Initially, in 1991, the State sought to have Claude's paternity established by a blood test. Shortly thereafter, a Petition to Establish Paternity and Support was filed against Claude. However, it was not until May 2000 that Claude filed his answer to the State's petition. In March 2001, Claude filed a third-party demand against Hollis claiming that as Carrie's legal father, he was also obligated for her support. In March 2002, these proceedings ensued.
[2] DNA analysis showed a 99.999 percent probability that Claude was Carrie's biological father. The Blood Test Results and Affidavit were made part of the trial record.
[3] The Smith court was not faced with the question of whether the "legal" father shared the support obligation, and it declined "for now to hold the legal father will, in all factual contexts, be made to share the support obligations with the biological father and the mother." Id. at 855. Likewise, in this case, we are not faced directly with the issue of whether Hollis should be made to share in the support of Carrie as the State is not seeking support from Hollis, but whether Claude is responsible for any amount of her support.
[4] The Guidelines For Determination of Child Support are set forth in La. R.S. 9:315, et seq. (the "guidelines").
[5] Specifically, this figure was derived by considering Angela's monthly income of $1,680.00 and the monthly income of a "fictional father," i.e., a combination of Claude's and Hollis's incomes. The "fictional father's" monthly income was derived by taking the sum of Claude's monthly income of $2,264.00 and Hollis's monthly income of $1,209.00 for a total of $3,473.00 a month. Using the combined monthly adjusted gross income of the parents (that being $5,153.00) and considering the guidelines, the basic monthly child support obligation for Carrie was determined to be $711.36. After adding in Carrie's health insurance premium, which Angela paid, the total child support obligation for Carrie came to $771.36, of which the "fictional father" was responsible for 67.40 percent or $519.88.
[6] "In a proceeding for divorce or thereafter, the court may order either or both of the parents to provide ... final support for a child based on the needs of the child and the ability of the parents to provide support." La. C.C. art. 141.