# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #023

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **5th day of May, 2015**, are as follows:

**BY HUGHES, J.**:

2014-CC-1025    STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND FAMILY SERVICES, IN THE INTEREST OF A.L. v. THOMAS ROBERT LOWRIE (Parish of Jefferson)

Judge Scott J. Crichton, assigned as Justice ad hoc, sitting for Justice Jeffrey P. Victory, for oral argument. He now sits as an elected Associate Justice at the time this opinion is rendered.

Accordingly, we reverse the Jefferson Parish Juvenile Court's February 24, 2014 judgment of dismissal, and we remand this matter to the Jefferson Parish Juvenile Court for further proceedings consistent with the foregoing.
REVERSED AND REMANDED.

WEIMER, J., additionally concurs with reasons.
GUIDRY, J., dissents and assigns reasons.

05/05/15

**SUPREME COURT OF LOUISIANA**

**NO. 2014-CC-1025**

**STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND FAMILY SERVICES, IN THE INTEREST OF A.L.**

**VERSUS**

**THOMAS ROBERT LOWRIE**

**ON SUPERVISORY WRITS TO THE JUVENILE COURT FOR THE PARISH OF JEFFERSON**

**HUGHES, J.**\*

This writ presents the issue of whether an alleged biological father should be joined in a child support enforcement action, filed pursuant to LSA-R.S. 46:236.1.1 et seq. against the legally-presumed father. The juvenile court denied joinder, and the appellate court denied writs. Concluding that a biological father owes an obligation of support to his child, we reverse and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

In December of 2002 Thomas Robert Lowrie married Melissa Percy Lowrie, who gave birth to two children during the marriage: A.L., born February 4, 2003; and B.W., born May 4, 2009. In October of 2010 the Lowries were divorced.

---

\*Judge Scott J. Crichton, assigned as Justice ad hoc, sitting for Justice Jeffrey P. Victory, for oral argument. He now sits as an elected Associate Justice at the time this opinion is rendered.

Although the children were born during the marriage, Mr. Lowrie, believing that Stephen A. Wetzel was the biological father of the children, sought to disavow paternity of the children. Mr. Lowrie successfully disavowed paternity of the younger child, B.W., in January of 2011; however, his action to disavow the older child, A.L., was found to be untimely. Therefore, Mr. Lowrie remains the legal father of A.L.

In September of 2012, the State of Louisiana, Department of Children and Family Services ("DCFS"), represented by the Jefferson Parish District Attorney (collectively, "State"), filed an action in the Jefferson Parish Juvenile Court against Mr. Lowrie, seeking medical and child support for A.L. DCFS alleged that it was providing services for A.L., which created a cause of action in favor of the State pursuant to the State's child support enforcement law, LSA-R.S. 46:236.1.1 et seq.

The court minutes for January 22, 2013 stated that both A.L.'s mother and Mr. Lowrie appeared, along with counsel, before the juvenile court hearing officer on a rule for child support.[1] The hearing officer noted that "[t]here is a biological father also [and] his income was imputed as $1919.00 from the Louisiana Occupational Handbook." The minutes also noted that the hearing officer calculated what the proportional amount of child support for Mr. Lowrie would be if the combined monthly income for the parties included the attributed income of the biological father; the monthly amount owed by Mr. Lowrie when calculated by that method was $869.00. However, the minute entry further stated:

> The hearing officer does not agree with the foregoing methodology and will not consider the income of the biological father in the calculation.
>
> The hearing officer cannot proceed with the calculation of another worksheet as both parties may be benefitting from expense sharing and sufficient information is not available.

---

[1] An expedited process for the establishment of paternity and/or the enforcement of child support, which authorizes hearing officers to preside over certain proceedings, is established by LSA-R.S. 46:236.5.

> [The] [h]earing officer recommends that [a] temporary order of support be entered in the amount of $500.00 . . . every month . . . .[2]

A judgment was thereafter signed by the juvenile court judge ordering that the recommendation of the hearing officer be made the judgment of the court.

On July 19, 2013, Mr. Lowrie filed a "Petition for Third Party Claim," alleging that Mr. Wetzel was a necessary and indispensable party to the support proceeding, asserting that Mr. Wetzel's income should be included in any child support calculation, and requesting that Mr. Wetzel be made a party defendant. In response, Mr. Wetzel filed exceptions of no cause of action, no right of action, lack of procedural capacity, and vagueness.

Following a December 9, 2013 review by the juvenile court hearing officer, the hearing officer recommended that Mr. Lowrie's third party claim be dismissed, stating:

> Thomas Robert Lowrie (original defendant herein) is the legal father of [A.L.], having been married to the mother of said child, Melissa Danielle Lowrie. Mr. Lowrie is listed as the child's father on the birth certificate. A disavowal action has been dismissed as untimely.
>
> Stephen A. Wetzel argues through counsel that he has not been found to be the biological father of [A.L.], and that the proper plaintiff in any filiation action is Melissa Danielle Lowrie, the recipient of child support herein, rather than the [DCFS]. Ms. Lowrie has not filed any action to have Mr. Wetzel named as the child's biological father.
>
> The hearing officer recommends that the Third Party Claim be dismissed as to Stephen A. Wetzel, as he has not been found to be the biological father of [A.L.] (or to have any official relationship to the child) and therefore has no obligation to provide support.
>
> The attorney for Thomas Robert Lowrie disagrees and requests a hearing before the judge.

During the subsequent February 24, 2014 hearing before the juvenile court judge, Mr. Lowrie proffered into evidence Melissa Lowrie's March 2013 answers

---

[2] The record indicates that the amount of child support payable by Mr. Lowrie was subsequently increased to $1,241.00, with no consideration of the income of, or any support that may have been provided by, the alleged biological father.

to interrogatories, wherein she admitted that: Mr. Wetzel was the biological father of both B.W. and A.L.; Mr. Wetzel submitted to paternity testing for A.L.; the results of the paternity test reflected that Mr. Wetzel was the biological father of A.L.; and, she was living with Mr. Wetzel. A copy of the 2008 "Paternity Analysis Report" was also proffered and filed into the juvenile court record; it stated that Mr. Wetzel's probability of paternity of A.L. was 99.17%.[3] The juvenile court judge ruled to uphold the hearing officer's December 9, 2013 recommendation to dismiss Mr. Lowrie's third party demand against Mr. Wetzel.

Mr. Lowrie applied for supervisory review to the appellate court, which denied his application. See **State, Department of Children and Family Services ex rel. A.L. v. Lowrie**, 14-0210 (La. App. 5 Cir. 4/16/14) (unpublished). Mr. Lowrie then filed a writ application with this court, which was granted. See **State, Department of Children and Family Services ex rel. A.L. v. Lowrie**, 14-1025 (La. 10/3/14), 149 So.3d 275.

## LAW AND ANALYSIS

Third Party Demand

A demand incidental to the principal demand may be instituted against an adverse party, a co-party, or against a third person. LSA-C.C.P. art. 1031(A). Incidental demands are reconvention, cross-claims, intervention, and the demand against third parties. LSA-C.C.P. art. 1031(B). The defendant in a principal action by petition may bring in any person, including a codefendant, *who is his warrantor*, or *who is or may be liable to him for all or part of the principal demand*. LSA-C.C.P. art. 1111. In such cases the plaintiff in the principal action

---

[3] We note that on the dates of both the December 9, 2013 hearing officer proceeding and the February 24, 2014 juvenile judge hearing, "Child Support Information Sheets" were completed and filed into the record, providing address, employment, expense, and salary information for the parties *and* the alleged biological father, Stephen Wetzel; each party and Mr. Wetzel signed his or her respective "Child Support Information Sheet."

4

may assert any demand against the third party defendant arising out of or connected with the principal demand. **Id.**

However, the legislature did not intend that LSA-C.C.P. art. 1111 be used by a third party plaintiff to implead a third party defendant on the assertion that he is liable to the *original plaintiff* directly for all or part of the *original plaintiff's* demand. Article 1111 provides, rather, that the third party demand must allege that the third party defendant is liable *to the third party plaintiff* for all or part of the principal demand. See **Karam v. St. Paul Fire & Marine Insurance Company**, 281 So.2d 728, 732 (La. 1973). When a third party plaintiff does not allege that the third party defendant is liable to them for all or part of the principal demand, the third party demand fails to state a cause of action. **Id.**

In this case, Mr. Lowrie's "third party claim" against Mr. Wetzel did not assert that Mr. Wetzel was his warrantor or that Mr. Wetzel was liable to him for all or part of the principal demand; therefore, the claims asserted were not properly presented as a third party demand.

Nevertheless, our Code of Civil Procedure requires that every pleading be so construed as to do substantial justice. See LSA-C.C.P. art. 865. Further, the articles of the Code of Civil Procedure are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves. See LSA-C.C.P. art. 5051.

Harsh rules of pleading are not favored in this state. Each pleading must be reasonably construed so as to afford the litigant his day in court, arrive at the truth, and do substantial justice. **Succession of Smith**, 247 La. 921, 928, 175 So.2d 269, 271 (La. 1965). See also **Quinn v. Louisiana Citizens Property Insurance Corporation**, 12-0152 (La. 11/2/12), 118 So.3d 1011, 1017 n.6; **First National Bank of Picayune v. Pearl River Fabricators, Inc.**, 06-2195 (La. 11/16/07), 971 So.2d 302, 308-09. The characterization of a pleading by the litigant is not

5

controlling. Pleadings are taken for what they actually are and not for what their authors designate them. A court should not reject a justiciable cause "merely because it is dressed in the wrong coat." **Succession of Smith**, 175 So.2d at 271. See also **Alcorn v. City of Baton Rouge ex rel. Baton Rouge Police Department**, 03-2682 (La. 1/16/04), 863 So.2d 517, 519; **Katz v. Katz**, 412 So.2d 1291, 1293 (La. 1982); **Smith v. Cajun Insulation, Inc.**, 392 So.2d 398, 402 n.2 (La. 1980) ("Courts should look through the caption of pleadings in order to ascertain their substance and to do substantial justice to the parties.").

As in **Succession of Smith**, we must analyze the pleading at issue and determine what, in reality, it asserts. See 175 So.2d at 271-72. An analysis of Mr. Lowrie's "Petition for Third Party Claim" discloses that the pleading contends that Mr. Wetzel is a necessary and indispensible party to this suit, that Mr. Wetzel's income should be included in any child support calculation, and that Mr. Wetzel should be made a party defendant. Therefore, in reality, the pleading presents an LSA-C.C.P. art. 927(A)(4) peremptory exception pleading the objection of nonjoinder of a party and a defense on the merits (i.e., owing to the fact that Mr. Wetzel is allegedly the biological father of A.L., a mechanical application of the child support guidelines would be inequitable to Mr. Lowrie, so that a deviation from the guidelines to include the income of Mr. Wetzel is warranted pursuant to LSA-R.S. 9:315.1(B)(1)).

We examine, first, the juvenile court ruling that Mr. Lowrie could not raise a defense as to Mr. Wetzel in this child support action, and, thereafter, we address the nonjoinder issue.[4]

_____

[4] We note that the ruling of the juvenile court lacks specificity. While the juvenile court hearing officer issued a recommendation that the "third party claim" urged by Mr. Lowrie be dismissed, which was accepted by the juvenile court judge, the exceptions of no cause of action, no right of action, lack of procedural capacity, and vagueness, raised by Mr. Wetzel to the "third party claim," were not mentioned in the hearing officer's recommendation and reasons. The hearing officer's recommendation and reasons stated simply: "The hearing officer recommends that the Third Party Claim be dismissed as to Stephen A. Wetzel, as he has not been found to be the

6

<u>Parental Duty of Support</u>

What obliges parents to nourish and rear their children is the fact of maternity or paternity. The obligation of support exists even outside of marriage and in favor of illegitimate children. The parent's duty of support and upbringing is a legal duty owed to the child. **Hogan v. Hogan**, 549 So.2d 267, 271 (La. 1989) (citing 1 M. Planiol, <u>Civil Law Treatise,</u> Pt. 2, §§ 1681-86). The obligation to support their children is conjoint upon the parents, and each must contribute in proportion to his or her resources. **Id.** <u>See also</u> LSA-C.C. art. 227 ("Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children."); LSA-C.C. art. 240 ("Fathers and mothers owe alimony to their illegitimate children, when they are in need . . . ."); and LSA-C.C. art. 241 ("Illegitimate children have a right to claim this alimony, not only from their father and mother, but even from their heirs after their death.").

Filiation is the legal relationship between a child and his parent. LSA-C.C. art. 178. Filiation is established by proof of maternity or paternity or by adoption. LSA-C.C. art. 179.

The husband of the mother is presumed to be the father of a child born during the marriage or within three hundred days from the date of the termination of the marriage. LSA-C.C. art. 185. The presumption that the husband of the mother is the father of the child has been referred to as the strongest presumption in the law. LSA-C.C. art. 185, 2005 Official Revision Comment (b) (citing **Tannehill v. Tannehill**, 261 La. 933, 261 So.2d 619 (1972); **Williams v. Williams**, 87 So.2d 707 (La. 1956); Katherine Shaw Spaht and William Marshall

---

biological father of [A.L.] (or to have any official relationship to the child) and therefore has no obligation to provide support." The "Minute Entry - Judgment" signed by the juvenile court judge, making the hearing officer's recommendation the judgment of the court, provided no additional reasons for the ruling, and no transcript of these proceedings has been provided to this court.

Shaw, Jr., The Strongest Presumption Challenged: Speculations on Warren v. Richard and Succession of Mitchell, 37 La.L.Rev. 59 (1976)).

Despite the presumption that the husband of the mother is the father of all children born or conceived during the marriage,[5] a biological father in Louisiana is entitled to establish his paternity of his illegitimate child, even though to do so may result in "dual paternity" of the child. See **T.D. v. M.M.M.**, 98-0167 (La. 3/2/99), 730 So.2d 873, 875-76, abrogated in part on other grounds, **Fishbein v. State ex rel. Louisiana State University Health Sciences Center**, 04-2482 (La. 4/12/05), 898 So.2d 1260.

As stated by this court in **T.D. v. M.M.M.**, certain policy factors favor allowing a biological father to avow his child, even though such action would result in dual paternity, including: a biological father is susceptible to suit for child support until his child reaches majority, and a child who enjoys legitimacy as to his legal father may seek to filiate to his biological father in order to receive wrongful death benefits or inheritance rights. See **T.D. v. M.M.M.**, 730 So.2d at 876. Thus, this court reasoned that it seems only fair, in light of the obligations to which a biological father is susceptible and the multitude of benefits available to the biological child due to the biological link, that the biological father should be afforded at least an opportunity to prove his worthiness to participate in the child's life. Alternatively, a biological father who cannot meet the best-interest-of-the-child standard retains his obligation of support but cannot claim the privilege of parental rights. See **id**.

---

[5] Former Civil Code Articles 184 and 185 provided that the husband of the mother is presumed to be the father of all children "born or conceived during the marriage" and that a child born "less than three hundred days" after the dissolution of the marriage "is presumed to have been conceived during the marriage." The substance of these articles now appears in LSA-C.C. art. 185, as revised by Acts 2005, No. 192, providing: "The husband of the mother is presumed to be the father of a child born during the marriage or within three hundred days from the date of the termination of the marriage." The 2005 revision did not change the law. See LSA-C.C. art. 185, 2005 Revision Comments (a). As the pre-2005 cases discussed herein refer to this presumption by reference to former Article 184, to avoid repetitious references to the 2005 revision and for ease of discussion, we will refer to the presumption as the "legal father presumption."

The concept of dual paternity in Louisiana was introduced in **Warren v. Richard**, 296 So.2d 813 (La. 1974). <u>See</u> **Smith v. Cole**, 553 So.2d 847, 850-51 (La. 1989). **Warren v. Richard** addressed the issue of whether an illegitimate child could recover for the wrongful death of a biological father when the child was also the legitimate child of another man under the law, commenting: "It is the dual paternal parentage of this child - one father created by nature, another created by law - which poses the problem we must resolve." <u>See</u> **Warren v. Richard**, 296 So.2d at 815.

**Warren v. Richard** held that "[t]o say that the child . . . had no right to recover for her biological father's wrongful death because the law presumed her to be the legitimate child of another man would run counter to the principles established in the decisions of the United States Supreme Court . . . and would ignore the existence of the child's biological father." **Warren v. Richard**, 296 So.2d at 817 (citing **Levy v. Louisiana**, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968)). Such a conclusion, **Warren v. Richard** noted, was not unique in Louisiana law, pointing to former LSA-C.C. art. 214, which provided that an adopted child is not divested of his right to inherit from his blood parents, upon adoption, while he may also inherit from his adoptive parent.[6] Nevertheless, the court indicated that it was "not unmindful of the problems a logical extension of these holdings may create, such as a child in these circumstances recovering from both fathers for support and maintenance, or, conversely, requiring the child to support both fathers in a proper case." <u>See</u> **Warren v. Richard**, 296 So.2d at 817.

Subsequently, **Smith v. Cole** considered whether a mother could assert a paternity and support action against an alleged biological father, notwithstanding

---

[6] The pertinent text of former LSA-C.C. art. 214 is now found in LSA-C.C. art. 199, which reads: "Upon adoption, the adopting parent becomes the parent of the child for all purposes and the filiation between the child and his legal parent is terminated, except as otherwise provided by law. The adopted child and his descendants retain the right to inherit from his former legal parent and the relatives of that parent."

that the child was conceived or born during the mother's marriage to another man and was thus the legitimate child of that other man.  See **Smith v. Cole**, 553 So.2d at 848.  Applying the concept of dual paternity, **Smith v. Cole** held that a biological father has an obligation to support his child regardless of the child's status as the legitimate child of another man, stating:  "Since [the legal father's] failure to disavow paternity would not preclude [the biological father] from bringing an avowal action, it would be unjust to construe the presumption so as to provide [the biological father] with a safe harbor from child support obligations."  **Id.** at 854.

In reaching its decision, the **Smith v. Cole** court noted that "the family unit concept," which was aimed at the preservation of family values, had begun to succumb to the equal protection rights of illegitimate children, obviating the need to protect children against the legal stigmas attached to illegitimacy.  See **Smith v. Cole**, 553 So.2d at 850 n.4.  See also **Pociask v. Moseley**, 13-0262 (La. 6/28/13), 122 So.3d 533, 538; **Gallo v. Gallo**, 03-0794 (La. 12/3/03), 861 So.2d 168, 174; **T.D. v. M.M.M.**, 730 So.2d at 878-79 (Justice Knoll, concurring) ("Where a marital unit is intact, the State's interest in preserving the integrity of the marital family may also silence a biological father's competing interests . . . . However, once the bonds of matrimony are dissolved *a vinculo matrimonii*, the State's interest in preserving the marital family disappears . . . . Today's realities are that illegitimacy and 'broken homes' have neither the rarity nor the stigma as in the past.  When parenthood can be objectively determined by scientific evidence, and where illegitimacy is no longer stigmatized, presumptions regarding paternity are 'out of place.'").

While the legal father presumption promoted the policy against bastardizing children, it often failed to conform with reality by conclusively presuming, as legal father, a husband who could not possibly be, or who clearly was not, the biological

father (such as when a husband and wife separated for many years before the birth of a child, though they had not divorced, and, at the time of the birth, the mother was living in a stable union with another man, who was the actual biological father of the child). See **Smith v. Cole**, 553 So.2d at 850 (citing **Succession of Mitchell**, 323 So.2d 451 (La. 1975)). Considerations such as these prompted the legislature to enact codal amendments making the "irrebuttable" legal father presumption rebuttable, but the amendments did not alter the rule that only the husband or his heir may disavow paternity.[7] See **id.**

Thus, it is well-settled that the legal father presumption should not be extended beyond its useful sphere. **Smith v. Cole**, 553 So.2d at 854. The presumption was intended to protect innocent children from the stigma attached to illegitimacy and to prevent case-by-case determinations of paternity. It was not intended to shield biological fathers from their support obligations. The legally-presumed father's acceptance of paternal responsibilities, either by intent or default, does not enure to the benefit of the biological father. It is the fact of biological paternity or maternity that obliges parents to nourish their children. The biological father does not escape his support obligations merely because others may share with him the responsibility. Biological fathers are civilly obligated for the support of their offspring. They are also criminally responsible for their support.[8] **Id.** "[T]he fact that there is a biological father capable of providing

---

[7] **Smith v. Cole** declared that the recognition of actual paternity, through a filiation action brought by the illegitimate child, the biological father, *or the state*, does not affect the child's statutory classification of legitimacy vis-à-vis the child's legal father. See **Smith v. Cole**, 553 So.2d at 854. When the time period for disavowal by the mother's husband has expired, the child is conclusively presumed to be the legal and legitimate child of the mother's husband. Such a legal tie of paternity will not be affected by subsequent proof of the child's actual biological tie. A legitimate child cannot be bastardized by succeeding proof of actual parentage. **Id.**

[8] See also **State v. Jones**, 481 So.2d 598 (La. 1986) ("[W]e conclude that the term 'parent' in La. R.S. 14:74(2) encompasses only the persons who begot or brought forth the child and cannot constitutionally be expanded by interpretation to include a person who is merely presumed in the civil law to be the parent . . . . Whether to punish as criminal a person's failure to support a child, when the person is the husband of the mother but not the biological father of the child, is a

11

support cannot equitably be ignored," and "[t]he biological father and the mother share the support obligations of the child." **Id.** at 855.

Therefore, in the instant case, there can be no doubt that if Mr. Wetzel is the biological father of A.L., he has an obligation to contribute to her support.[9]

Left undecided in **Smith v. Cole** was the question of whether the legal father also would share the support obligation, as the legal father was not a party named in the suit and therefore was not before the court. However, it was noted that the best interest of the child should be considered in determining whether the court in a given case would impose the obligation of support on the person who, by virtue of the legal father presumption, is conclusively presumed to be the father of the child. See **id.**

As in **Smith v. Cole**, we are not called upon to determine here whether the legal father must contribute to the support of the child, who he claims is not his biological child; rather, the issue for resolution is whether the legal father, in a state-filed child support enforcement action, is entitled to have the court consider the income of the alleged biological father in calculating the child support obligation and whether the alleged biological father should be joined as a defendant in the action.

Louisiana's Child Support Enforcement Law

Child support enforcement actions in Louisiana are authorized by LSA-R.S. 46:236.1.1 et seq. DCFS is authorized by LSA-R.S. 46:236.1.2 to: (1) enforce, collect, and distribute any established support obligation owed by any person to his child or children; (2) locate absent parents; (3) establish paternity; (4) obtain and modify family and child support orders; and/or (5) obtain and modify medical

_____

decision which must be made by the Legislature and not by the courts. The Legislature has not expressly done so in the current version of the statute.").

[9] See also Katherine Shaw Spaht, Who's Your Momma, Who are Your Daddies?: Louisiana's New Law of Filiation, 67 La.L.Rev. 307, 321-27 (2007).

support orders.[10]

Further, DCFS may also institute civil actions, including actions to establish filiation, "against an alleged biological parent *notwithstanding the existence of a legal presumption that another person is the parent* of the child" to obtain an order, judgment, or agreement of support against the responsible person in any case in which the department is providing services under the child support enforcement provisions, except when it is not in the best interest of the child. See LSA-R.S. 46:236.1.2(D)(1) (emphasis added). A separate and distinct cause of action in favor of DCFS is created by LSA-R.S. 46:236.1.2(D)(1), and suits brought under this provision "need not be ancillary to or dependent upon any other legal proceeding."[11]

Louisiana courts have imposed child support obligations on biological fathers, in child enforcement suits filed by the State, even when the child has a legally-presumed father, holding that the concept of "dual paternity" and the child support enforcement law, LSA-R.S. 46:236.1.1 et seq., empowers the State to file a suit to establish filiation and child support. See **State, Department of Social Services in the Interest of P.B. v. Reed**, 10-0410 (La. App. 5 Cir. 10/26/10), 52 So.3d 145, 146, writ denied, 10-2611 (La. 2/18/11), 57 So.3d 333; **State, Department of Social Services, Office of Family Support, Support Enforcement Services in the Interest of Williams v. Howard**, 03-2865 (La. App. 1 Cir. 12/30/04), 898 So.2d 443; **State in the Interest of Wilson v. Wilson**, 37,674 (La. App. 2 Cir. 9/24/03), 855 So.2d 913, 914-15, writ denied, 03-2970 (La. 1/16/04), 864 So.2d 633; **State, Department of Social Services, Office of Family**

---

[10] We also note that the federal law with which DCFS is obliged to comply, 45 C.F.R. § 303.5, requires that, in "all cases . . . in which paternity has not been established, the . . . agency must, as appropriate[,] . . . [a]ttempt to establish paternity *by legal process established under State law*." (Emphasis added.)

[11] The authority of DCFS to institute such a proceedings is expressly stated as being "without the necessity of written assignment, subrogation, tutorship proceedings, or divorce proceedings."

**Support in the Interest of Munson v. Washington**, 32,550 (La. App. 2 Cir. 12/8/99), 747 So.2d 1245, 1247-48; **State, Department of Health and Human Resources, Office of Family Security, in the Interest of Robins v. Hinton**, 515 So.2d 566, 568-69 (La. App. 1 Cir. 1987); **State Department of Health & Human Resources in the Interest of Guillory v. Guillory**, 407 So.2d 1327, 1329 (La. App. 3 Cir. 1981) ("We conclude . . . that a natural father is within the ambit of primary responsibility for the support of his children."); **State in the Interest of Poche v. Poche**, 368 So.2d 175, 176-77 (La. App. 4 Cir.), <u>writ denied</u>, 370 So.2d 577 (La. 1979) ("It sufficed to simply determine that the child was in fact the biological child of the alleged father. The fact that the law considered the child to be the legitimate child of another will not alter the result . . . .").

We note with particular interest the case of **State, Department of Social Services in the Interest of P.B. v. Reed**, supra, which was, as in the instant case, also filed by the Jefferson Parish District Attorney. In the **Reed** case, the district attorney filed a "Petition to Prove Paternity and Obtain Child Support," in the Juvenile Court for Jefferson Parish, against the child's alleged biological father, even though the child was born during the mother's marriage to her husband, the child's legal father. On appeal by the State, its sole assignment of error was that the juvenile court judge erred in the methodology used to calculate the child support obligation of the biological father in a dual paternity situation. <u>See</u> **id**. at 147. The appellate court noted that the juvenile court had calculated the child support award by taking into account the incomes of the mother, the legal father, and the biological father. <u>See</u> **id**. at 148. Although the appellate court ruled that the juvenile court judge abused her limited discretion in calculating the child support award, the error stated was that the lower court did not use "verified" income statements, such as paycheck stubs, employer statements, or the most recent tax returns from the mother, legal father, and biological father. **Id.** There

was no implication in **Reed** that it was improper to take into account the incomes of the mother, the legal father, *and* the biological father, only that when doing so the quality of the evidence of income must be as set forth in LSA-R.S. 9:315.2(A). **Id.** at 148-49.

Further, procedures applicable in child support enforcement actions to determine paternity and fix child support obligations are compatible with Mr. Lowrie's assertion that Mr. Wetzel's income should be included in the calculation of child support. See LSA-R.S. 9:396(B)(1) (providing for a procedure whereby a district attorney representing DCFS in a child support enforcement action may, on ex parte motion accompanied by an affidavit executed by a party alleging specific facts tending to prove paternity, obtain a court order "directing the mother, her husband or former husband, child, *and alleged father* to appear at a certain date and time to submit to the collection of blood or tissue samples" for paternity testing (emphasis added)); LSA-R.S. 46:236.5 (authorizing a hearing officer to order blood and tissue tests for the determination of paternity in accordance with LSA-R.S. 9:396 et seq. in a child support enforcement action).

In addition, the child support guidelines, LSA-R.S. 9:315 et seq., apply to cases brought by the State under Title 46 (which includes the child support enforcement law, LSA-R.S. 46: 236.1.1 et seq.).[12] **State, Department of Social Services v. Hebert**, 612 So.2d 888, 890 (La. App. 5 Cir. 1993).[13] Revised Statute 9:315.1(A) states that the child support guidelines are to be used in *any* proceeding to establish or modify child support filed on or after October 1, 1989, and there

---

[12] See also La. Admin Code, Title 67, Part III, § 2511, applicable to DCFS in child support enforcement actions, stating: "The child support award guidelines established in R.S. 9:315 et seq. shall be used in any proceeding to establish or modify child support orders. There shall be a rebuttable presumption that the amount of the child support established by use of the guidelines is the proper amount of child support."

[13] See also **State, Department of Social Services in the Interest of C.C.H. v. Hawkins**, 41,646 (La. App. 2 Cir. 12/20/06), 946 So.2d 305, 310; **State ex rel. Gilbert v. Gilbert**, 34,203 (La. App. 2 Cir. 12/20/00), 775 So.2d 1182, 1185; **State ex rel. H.B. v. Blair**, 40,140 (La. App. 2 Cir. 8/17/05), 909 So.2d 710, 713, writ denied, 05-2392 (La. 3/17/06), 925 So.2d 548.

15

shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines is the proper amount of child support. However, the court may deviate from a "mechanical application" of the child support guidelines "if their application would not be in the best interest of the child or would be inequitable to the parties." See LSA-R.S. 9:315.1(B)(1). See also LSA-R.S. 9:315.1(C);[14] LSA-R.S. 9:315.2(C);[15] **State in the Interest of Wilson v. Wilson**, 855 So.2d at 914-16.[16]

Clearly, existing laws provide the procedures by which an alleged biological father's paternity could be determined and his contribution to the child's support could be assessed, within the context of a child enforcement action, and such has been done in prior cases, and such is in accord with express legislative policy.[17]

---

[14] Section 9:315.1(C) provides: "In determining whether to deviate from the guidelines, the court's considerations may include . . . [a]ny other consideration which would make application of the guidelines not in the best interest of the child or children or inequitable to the parties."

[15] Section 9:315.2(C) provides: "The parties shall combine the amounts of their adjusted gross incomes. Each party shall then determine by percentage his or her proportionate share of the combined amount. The amount obtained for each party is his or her percentage share of the combined adjusted gross income."

[16] In **State in the Interest of Wilson v. Wilson**, the trial court deviated from the guidelines by employing a method of calculating the combined adjusted monthly gross income of the parties that included the income of a "fictional father" (i.e., the combined incomes of the legal father and the biological father), assigning a percentage of the resulting child support owed (derived in accordance with the LSA-R.S. 9:315.19 schedule) to the "fictional father," and then apportioning to each of the two fathers a child support obligation based on the percentage each respective fathers' income was to the whole of the "fictional father's" total income.

[17] See LSA-R.S. 9:315(A) ("The premise of [the child support] guidelines as well as the provisions of the Civil Code is that child support is a continuous obligation of both parents, children are entitled to share in the current income of both parents, and children should not be the economic victims of divorce or out-of-wedlock birth. The economic data underlying these guidelines, which adopt the Income Shares Model, and the guideline calculations attempt to simulate the percentage of parental net income that is spent on children in intact families incorporating a consideration of the expenses of the parties, such as federal and state taxes and FICA taxes. While the legislature acknowledges that the expenditures of two-household divorced, separated, or non-formed families are different from intact family households, it is very important that the children of this state not be forced to live in poverty because of family disruption and that they be afforded the same opportunities available to children in intact families, consisting of parents with similar financial means to those of their own parents."); LSA-R.S. 9:315.30 ("The legislature finds and declares that child support is a basic legal right of the state's parents and children, that mothers and fathers have a legal obligation to provide financial support for their children, and that child support payments can have a substantial impact on child poverty and state welfare expenditures. It is therefore the legislature's intent to facilitate the establishment of paternity and child support orders and encourage payment of child support to decrease overall costs to the state's taxpayers while increasing the amount of financial

Therefore, we conclude that Mr. Lowrie's asserted defense, that he be accorded a deviation in the mechanical application of the child support guidelines to take into account Mr. Wetzel's income, if Mr. Wetzel's paternity of A.L. is proven, should not have been summarily dismissed.

We reject the State's argument that this court should refrain from allowing a legal father, such as Mr. Lowrie, from asserting a defense that requires joinder of an alleged biological father, such as Mr. Wetzel, because of the "potential of causing enormous delays" in establishing support orders, both in the first instance and in the case of subsequent modifications of support orders. The State argues that it receives "approximately 6 applications" for support enforcement per year in Jefferson Parish involving both a legal father and a biological father and that allowing a legal father to bring into the case an alleged biological father who has not been filiated to the child "opens the door" for any presumed father sued for child support "to allege that some other man is the biological father of the child and bring him into the suit so that his income may be considered in the child support calculation." This, the State argues, would "create a mountain of issues and delays in the enforcement of child support as a whole." While it is commendable that the State is concerned about the potential for litigation delays in such circumstances, the directive found in Civil Code Articles 240 and 241, that fathers must provide support for their illegitimate children when in need, must prevail over case management concerns. We further note that the filing of wholly

---

support collected for the state's children . . . ."); LSA-R.S. 46:238(A) ("The legislature hereby finds and declares that the enforcement of child support orders and the collection of child support is in the best interest of its citizens by providing resources for the children who are the beneficiaries of those payments and by relieving burdens upon the public fisc . . . ."); LSA-Ch.C. art. 101 ("The people of Louisiana recognize the family as the most fundamental unit of human society; that preserving families is essential to a free society; that the relationship between parent and child is preeminent in establishing and maintaining the well-being of the child; that parents have the responsibility for providing the basic necessities of life as well as love and affection to their children . . . ."); LSA-Ch.C. art. 116(17) ("Except where the context clearly indicates otherwise, these definitions apply for the following terms used throughout this Code . . . "Parent" means any living person who is presumed to be a parent under the Civil Code or a *biological* or adoptive mother or *father of a child*." (Emphasis added.)).

unsubstantiated and frivolous claims runs the risk of sanctions pursuant to LSA-C.C.P. art. 863 and, in any event, in this case the mother's admissions and the biological father's DNA test results clearly provide a good faith basis for Mr. Lowrie's pleadings.

Nonjoinder of Biological Father

We next address Mr. Lowrie's allegations that Mr. Wetzel is a "necessary and indispensable party" and that he should be "named as a defendant in this matter." These allegations present an LSA-C.C.P. art. 927(A)(4) peremptory exception pleading the objection of nonjoinder of a party.[18]

Code of Civil Procedure Article 641 provides that a person shall be joined as a party in the action when either: (1) in his absence complete relief cannot be accorded among those already parties; (2) he claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either: (a) as a practical matter, impair or impede his ability to protect that interest; or (b) leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations. See also **Industrial Companies, Inc. v. Durbin**, 02-0665 (La. 1/28/03), 837 So.2d 1207, 1217 n.6 ("The 1995 amendments to Louisiana's joinder articles, La. Code of Civ. Proc. Art. 641 et seq. eliminated the categories of 'indispensable parties' and 'necessary parties' in favor of a single category of 'parties needed for just adjudication.'").[19]

---

[18] "The objections which may be raised through the peremptory exception include . . . [n]onjoinder of a party under Articles 641 and 642." LSA-C.C.P. art. 927(A)(4).

[19] The failure to join a party to an action may be pleaded in the peremptory exception, or may be noticed by the trial or appellate court on its own motion. LSA-C.C.P. art. 645. If a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already present; (2) the extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. LSA-C.C.P.

If Mr. Lowrie can establish that Mr. Wetzel is the biological father of A.L. at the trial of this matter, then the joinder of Mr. Wetzel (who, if a parent, may be or should be contributing to the support of A.L.[20]) is needed in this support enforcement action since, in his absence, the determination of the support currently available to A.L. and the support that is needed from Mr. Lowrie cannot be completely determined.

We reject the State's contention that DCFS "policy" prohibits a child support enforcement action against an alleged biological father when the mother has not named the alleged biological father on her application for support services. Since A.L.'s mother did not name Mr. Wetzel as an alleged father on her application for services, rather, she named only Mr. Lowrie, the State claims it was unable to pursue Mr. Wetzel for child support.

---

art. 642. Very few parties are absolutely indispensable to the litigation before the court. See Frank L. Maraist, 1 La. Civ. L. Treatise, Civil Procedure § 4:10 (2d ed.). Because, in the instant case, the trial court entered an interim order of child support, any delay in adding the alleged biological father to the litigation would cause no delay in child support to A.L. See **Watson v. Shorty**, 94-655 (La. App. 5 Cir. 1/18/95), 649 So.2d 1074, writ denied, 95-0700 (La. 6/30/95), 657 So.2d 1029 (stating that a trial court may enter an interim order of child support pending a full hearing on the issue). See also LSA-C.C. art. 141 ("In a proceeding for divorce *or thereafter*, the court may order either or both of the parents to provide *an interim allowance* or final support for a child based on the needs of the child and the ability of the parents to provide support . . . . only when a demand for final support is pending." (Emphasis added.)); LSA-R.S. 9:315.1(C) ("In determining whether to deviate from the guidelines, the court's considerations may include . . . (6) The *need for immediate and temporary support for a child* when a full hearing on the issue of support is pending but cannot be timely held. In such cases, the court at the full hearing shall use the provisions of this Part and may redetermine support without the necessity of a change of circumstances being shown." (Emphasis added.)); LSA-R.S. 9:399(A) ("In a proceeding for the determination of paternity and upon motion of any party, the court presiding over the paternity issue shall issue an order of *interim child support* if there is clear and convincing evidence of paternity on the basis of genetic testing or other evidence susceptible of independent verification or corroboration." (Emphasis added.)); LSA-C.C.P. art. 2592(8) ("Summary proceedings may be used for trial or disposition of the following matters only . . . (8) The original granting of, subsequent change in, or termination of custody, visitation, and support for a minor child . . . .")).

[20] We note that allegations have been made in brief to this court that Mr. Wetzel, while living with A.L. at the time the court proceedings currently under review were conducted, provided substantial support to A.L. (in particular, it was alleged that Mr. Wetzel was paying for A.L.'s private school tuition, dance class fees, and cheer camp fees), yet this support was not accounted for during the calculation of Mr. Lowrie's child support obligation, and A.L.'s private school tuition, dance class fees, and cheer camp fees were later added to Mr. Lowrie's child support obligation. That the mother's expenses incurred for the support of A.L. may have been reduced by Mr. Wetzel's financial contributions is a relevant factual circumstance, which cannot be equitably ignored.

Regardless of the internal "policies" of DCFS, the statutory law cited herein prevails over an agency's internal "policies" or customs. See LSA-C.C. art. 1 ("The sources of law are legislation and custom."); LSA-C.C. art. 2 ("Legislation is a solemn expression of legislative will."); LSA-C.C. art. 3 ("Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. Custom may not abrogate legislation."); LSA-C.C. art. 1, 1987 Revision Comment (a) ("Articles 1 and 3 of the Louisiana Civil Code of 1870 make it clear that the sources of law in Louisiana are legislation and custom. However, as in all codified systems, legislation is the superior source of law in Louisiana."). The regulations promulgated by an agency may not exceed the authorization delegated by the legislature. An agency exercising delegated authority is not free to pursue any and all ends, but can assert authority only over those ends which are connected with the task delegated by the legislative body. The open-ended discretion to choose ends is the essence of legislative power; it is this power that the legislative body possesses, but its agents lack. **State v. Alfonso**, 99-1546 (La. 11/23/99), 753 So.2d 156, 161-62. See also LSA-R.S. 49:963.[21]

Pursuant to LSA-R.S. 46:102, DCFS has authority to "make and promulgate all rules and regulations and take such action as may be necessary or desirable for carrying out the provisions of the public welfare laws." The rules and regulations so promulgated must be complied with "so that the spirit and purposes of the public welfare laws may be achieved." LSA-R.S. 46:102.

One of the laws DCFS is charged with carrying out, in the area of child support enforcement, is LSA-R.S. 46:236.1.2(D)(1), which authorizes DCFS to

---

[21] Louisiana Revised Statute 49:963 provides, in pertinent part: "The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the parish in which the agency is located . . . . The court shall declare the rule invalid or inapplicable if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with required rulemaking procedures."

"take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section," except when it is not in the best interest of the child. See also LSA-R.S. 46:236.1.12(A) ("Obligations ordered for support of a child are for the use and benefit of the child and shall follow the child.") and LSA-R.S. 46:236.1.9(A) ("The agencies, courts, and persons in Louisiana carrying out provisions of this Subpart [Subpart B. Child Support Enforcement] . . . shall have the affirmative responsibility to act in the best interest of the individual on whose behalf action is taken.").

The best interest of a child who is in necessitous circumstances, generally, is to recognize the tie to his biological father, as such recognition results in the biological father being obligated to provide his child with support.[22] See **Smith v. Cole**, 553 So.2d at 854.

In addition, the legislature has determined and declared that the enforcement of child support orders and the collection of child support is in the best interest of its citizens by providing resources for the children who are the beneficiaries of those payments and by relieving burdens upon the public fisc. LSA-R.S. 46:238(A). In furtherance its obligation to protect public assistance resources,[23] DCFS is required by LSA-R.S. 46:105 and LSA-R.S. 46:106 to investigate "the circumstances" of an applicant for assistance, to "ascertain the facts supporting the application and such other information as may be required by the rules and regulations of the department" to determine an applicant's eligibility for assistance. Obtaining services from DCFS by false statement, misrepresentation, or other

---

[22] The determination that a man is the biological father of a child also creates between them inheritance rights. **Lamana v. LeBlanc**, 526 So.2d 1107, 1111 n.3 (La. 1988).

[23] In accordance with LSA-R.S. 46:114.3, DCFS has an obligation to "establish, maintain, and provide for fraud detection functions."

fraudulent device is prohibited. See LSA-R.S. 46:114.[24]

In summary, the cited statutory provisions obligate DCFS to act in a child's best interest, which generally includes acting to establish paternity as to a child's biological parent, who then can be compelled to provide child support to the child. DCFS also has an obligation to the public to obtain orders of child support to provide resources for children so they are not a burden on the public fisc. DCFS is charged with investigating applications for assistance to deter the obtaining of services by false statements, misrepresentations, and/or fraud.

Therefore, to the extent the DCFS "policy," upon which the State relies to justify its failure to join the alleged biological father in this child support enforcement suit, sanctions the failure of A.L.'s mother to name A.L.'s biological father, the failure of A.L.'s mother to disclose the extent of financial support provided by A.L.'s biological father, and/or DCFS's failure act upon the existence of a biological father, such "policy" contravenes statutory law, exceeds DCFS's authority to promulgate rules, and, thus, such a "policy" is unenforceable.[25] See

---

[24] Section 46:114 provides, in pertinent part: "No person shall obtain or attempt to obtain assistance from [DCFS] by means of any false statement, misrepresentation, or other fraudulent device . . . . If the personal circumstances of the recipient change at any time during the continuance of assistance, he shall immediately notify the Department of Children and Family Services or the Department of Health and Hospitals of the change. Personal circumstances shall include: . . . [t]he members of the household[;] . . . [t]he establishment of a legal or nonlegal union by the recipient . . . ."

[25] The "policy" referenced by the State does not appear in the Louisiana Revised Statutes or Administrative Code. Rather, the State asserts in brief to this court that the "policy" is set forth in DCFS-issued documents, copies of which were appended to the State's brief to this court and include three, one to two page documents, titled as follows: (1) "B-310 Who is Eligible"; (2) "G-210 Paternity Overview"; and (3) "E-530 Non-Cooperation-Medical Cases (Non-FITAP)." The "G-210" document states, in pertinent part: "In some cases, the legal father is not the biological father. Under Louisiana law, both the legal and natural fathers are recognized, and both may have a legal and moral responsibility to support the child. In cases involving a legal father and a biological father, [*the agency*] *pursues the establishment of paternity and support against the biological father* named by [the custodial parent]. [The agency] will pursue the legal father upon the request of the applicant except as provided for in Section B-310." (Emphasis added.) We note that none of the exceptions listed in the "B-310" document appear in the instant case, nor is any part of the "E-530" document (which designates Medicaid recipients "uncooperative" for failure to appear for scheduled appointments) applicable to the circumstances presented in this case. Furthermore, the State has failed to comply with LSA-C.E. art. 202 with respect to these documents, which are asserted to be agency "policies" or rules. Article 202 allows a court to take judicial notice of the "[r]ules of boards, commissions, and agencies of this state that have been duly published and promulgated in the Louisiana Register," however, the State does not

22

LSA-C.C. arts. 1-3; LSA-R.S. 49:963; **State v. Alfonso**, supra.

## CONCLUSION

As we stated in **Smith v. Cole**, the mere fact that a legal father provides child support does not excuse the biological father from his obligation of support. See **Smith v. Cole**, 553 So.2d at 855. Even though Mr. Lowrie has been required to provide support, as the legal father of A.L., via this child support enforcement proceeding, Mr. Lowrie's "acceptance of paternal responsibilities . . . does not enure to the benefit of the biological father," alleged to be Mr. Wetzel. See **id.** at 854. Although the State may not have been aware at the time the instant suit was filed that Mr. Wetzel was believed by the parties to be A.L.'s biological father, once the information was disclosed during the course of this litigation, the State had the duty to petition the court to obtain: the maximum possible amount of child support for A.L., thereby also protecting the public fisc as required by LSA-R.S. 46:238(A); the equitable application of LSA-R.S. 9:315 et seq. in the calculation of A.L.'s child support; and the enforcement of the express legislative policy of this state by establishing A.L.'s filiation to her biological father, notwithstanding the existence of a legally-presumed father, unless it was not in A.L.'s best interest, pursuant to LSA-R.S. 46:236.1. If it is proven that Mr. Wetzel is the biological father of A.L. and is, therefore, legally obliged to contribute to A.L.'s support, Mr. Lowrie should be entitled to a deviation in the calculation of the child support obligation to include in the calculation the income of Mr. Wetzel, as authorized by LSA-R.S. 9:315.1(B)(1). Therefore, pursuant to LSA-C.C.P. art. 641 et seq., Mr. Wetzel is a person who should be joined as a party in this action as complete relief cannot be accorded in his absence.

For these reasons, we conclude the juvenile court erred in summarily

assert, nor have we been able to ascertain, that the submitted agency rules have been so published or promulgated. Even were it possible to take judicial notice of the submitted agency rules in this instance, these "policies" do not clearly support the proposition asserted.

dismissing Mr. Lowrie's defense, based on Mr. Wetzel's alleged paternity, and the court erred in failing to order the joinder of Mr. Wetzel.

## DECREE

Accordingly, we reverse the Jefferson Parish Juvenile Court's February 24, 2014 judgment of dismissal, and we remand this matter to the Jefferson Parish Juvenile Court for further proceedings consistent with the foregoing.

**REVERSED AND REMANDED.**

05/05/15

**SUPREME COURT OF LOUISIANA**

**NO. 2014-CC-1025**

**STATE OF LOUISIANA,
DEPARTMENT OF CHILDREN AND FAMILY SERVICES,
IN THE INTEREST OF A.L.**

**VERSUS**

**THOMAS ROBERT LOWRIE**

*ON SUPERVISORY WRITS TO THE JUVENILE COURT
FOR THE PARISH OF JEFFERSON*

**WEIMER, J.**, additionally concurring.

I concur. However, I write separately to note my concern with the delays that could inure to the blameless child and the receipt of necessary support while paternity issues are litigated in the enforcement proceeding. I share the State's concern that the assertion of the legal father's defense and the joinder of the biological father might redound to the child's detriment by creating delays in the receipt of necessary support. In my view, child support should not be postponed while the issues arising from dual paternity are resolved. These issues, which are essentially confined to the legal and biological fathers, should not be resolved at the expense of the child. Rather, to the extent permissible, sufficient child support should be ordered immediately, with any reimbursement issues to be resolved at the conclusion of litigation.

SUPREME COURT OF LOUISIANA

No. 2014-CC-1025

STATE OF LOUISIANA,
DEPARTMENT OF CHILDREN AND FAMILY SERVICES,
IN THE INTEREST OF A.L.

VERSUS

THOMAS ROBERT LOWRIE

ON SUPERVISORY WRITS TO THE JUVENILE COURT
PARISH OF JEFFERSON

**GUIDRY, J., dissents and assigns reasons.**

I respectfully dissent from the majority holding today. In my view, the district court correctly denied the legal father's petition for a third party claim against the alleged biological father. The question presented is whether the legal father can bring the alleged biological father into a child support proceeding (initiated against the legal father by the Department of Children and Family Services ("DCFS")) via a third party claim for the purposes of calculating child support before filiation has been determined. The district court correctly answered that question in the negative.

As the district court found, there is no issue of dual paternity because there has never been a filiation action filed, nor has the alleged biological father ever acknowledged paternity. The legal father's disavowal action was deemed untimely. Neither the child nor its mother has filed a filiation action on behalf of the child. Thus, the legal father has no cause of action under Louisiana law to demand reimbursement for child support from an individual who has never been legally established as the biological father. That DNA testing has revealed the

third party is most likely the child's biological father is certainly persuasive evidence of paternity; yet, there has been no factual finding, by a preponderance of the evidence, that the third party here is in fact the biological father. Therefore, there can be no cause of action against him for support by the legal father.

The majority opinion in reaching a contrary result must liberally construe the legal father's petition asserting the third party is a necessary and indispensable party to this suit, that the third party's income should be included in any child support calculation, and that the third party should be made a party defendant to the DCFS child support proceeding. Thus, the majority identifies the issues as nonjoinder of a party and a defense on the merits. In finding the legal father may assert a defense, the majority discusses at great length the concept of dual paternity in Louisiana and the obligations of the biological father. That discussion is irrelevant, as there has been no finding by a court that the third party is in fact the biological father. The legal father has no cause of action against a third party who has not been determined to be the biological father.

The majority acknowledges the DCFS may bring suit to establish paternity and to obtain support from the biological father. But the custodial parent in this case has not named the third party as the biological father. Accordingly, the DCFS has not filed suit against the alleged biological father, because no such allegation of paternity has been made by the custodial parent, but instead paternity has been asserted by the legal father in the third party action. In my view, the law does not specifically provide for such a third party action by the legal father. Accordingly, I dissent from the majority's reasoning.